# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| W.E. ANDREWS CO., INC., | : | CIVIL ACTION |
|     Plaintiff/Counterclaim Defendant | : | 3:02 CV 599 (CFD) |
| | : | |
| VS. | : | |
| | : | |
| PLASTIC DEVELOPMENT, INC., | : | |
|     Defendant/Counterclaim Plaintiff | : | |


## PROPOSED JURY CHARGES

The parties herewith respectfully submit their proposed charges to the jury.

A0067324.WPD

Proposed Instruction No. 1: Standard of Proof

In a civil action, such as the one you are now considering, the party advancing a claim has the burden of proof on the issues raised in its complaint by a fair preponderance of the evidence. The party has met that burden if the evidence, considered fairly and impartially, creates in your mind a reasonable belief that it is more probable than otherwise that the fact in issue is true. This is what is meant by "proof by a preponderance of the evidence." *See, Basker v. United Illuminating Company,* 156 Conn. 456, 458 (1968).

Here the plaintiff, W.E. Andrews Co., Inc. ["Andrews"] has claimed in its Complaint that the defendant, Plastic Development, Inc. ["PDI"], has failed to pay Andrews in accord with the terms of the parties' agreement. Here, also, PDI has claimed in its Counterclaim that Andrews breached the parties' agreement by failure to deliver press strips in accord with the terms of the parties' agreement.

As to their respective claims, the parties bear the same burden of proof by a preponderance of the evidence. *See, United Machinery Co. v. Etzel,* 89 Conn. 336, 339 (1915); *Superior Wire and Paper Products, Ltd., v. Talcott Tool and Machine, Inc.,* 184 Conn. 10, 13 (1981); *Conte & Dwan Lincoln-Mercury Inc.,* 172 Conn. 112, 120 (1976)

The parties must prove their respective claims by the better and weightier evidence. You will take all the evidence that is offered here, and consider the various circumstances which are involved; you will weigh and balance them. If you find that one of the parties, as to its claim or counterclaim, has shown the greater evidence, the more persuasive evidence, evidence sufficient to tip the scale ever so slightly in its favor, then it has proved the particular issue before you. *See,* Wright & Daly, *Connecticut Jury Instructions,* §311.

Proposed Instruction No.2-- Proximate Cause:

Before you can find either party liable to the other, it must have proved to you by a preponderance of evidence that the failure of the other to comply with its respective obligations under the parties' agreement was the proximate cause of the losses or harms A claimed breach is deemed to be the proximate cause of loss when it is a substantial factor in producing that loss. Proximate cause results from a sequence of events unbroken by a superseding cause, so that its causal viability continued until the moment of loss. In other words, not only must one party prove that the other breached the parties' agreement but that party must also prove that such breach was a substantial factor in bringing about the losses that it claims to have suffered.

Here, Andrews has claimed that PDI breached the parties' agreement by failure to pay for press strips PDI received. As a result thereof, Andrews has claimed, it lost money it was entitled to under the parties' agreement. Andrews, therefore, has the burden of proving by a fair preponderance of the evidence both proximate causation and the amount of its damages. *See, Bronson & Townsend Co., v. Battistoni*, 167 Conn. 321, 326 (1974); *Davis v. Fitzpatrick's, Inc.*, 5 Conn. App. 469, 472 (1985)

Here, also, PDI has claimed that Andrews breached the parties' agreement by failure to deliver press strips that conformed to the obligations of the contract, by breach of one or more of several warranties that were among the terms and conditions of the contract. As a result thereof, PDI has claimed, it lost contracts with the U.S. Mint and money that it reasonably expected would come to it under those contracts as well as other money. PDI, therefore has the burden of proving by a fair preponderance of the evidence both proximate causation and the amount of its damages. *See, Blockhead, Inc. v. The Plastics Forming Company, Inc.*, 402 F. Supp. 1017, 1028-29 (D. Conn. 1975).

You have also heard evidence offered by PDI that Andrews failed to deliver to PDI

press strips that conformed to Andrews' obligations under the parties' contract and that such nonconformities caused the U.S. Mint to terminate its contract with PDI, which in turn PDI claims caused it to lose reasonably anticipated future orders from the U.S. Mint and profits PDI could have made on such orders. PDI claims to have incurred damages in the investigation and reinspection of the inserts the U.S. Mint rejected. You must decide whether PDI has shown by a preponderance of the evidence that the press strips that Andrews delivered to PDI did not conform to Andrews' obligations under the parties' contract and, further, whether such nonconformities you may have found caused PDI the loss of future profits and other damages it has alleged.

Proposed Instruction No.3--Conforming Goods: Intent of the Parties:

A buyer bears the burden to establish any breach of contract with respect to the goods accepted. *See*, C.G.S. §42a-2-607(4); *Superior Wire & Paper Products, Ltd., v. Talcott Tool & Machine, Inc.*, 184 Conn. 10, 15, 441 A.2d 43 (1981).

Under Connecticut law, goods are "conforming" or conform to the contract when they are in accordance with the obligations under the contract. C.G.S. §42a-2-106(2).

In this case, the parties dispute whether the press strips Andrews delivered to PDI were conforming to the obligations of the parties' contract. You must decide what the parties intended to be Andrews' contract obligations with regard to the goods subject of the parties' contract.

The first place to look to find the parties' intent is the wording that was used in the contract. Words in a contract are to be given their ordinary meaning, unless they are special terms of trade or the parties have given them special meaning. If you cannot determine what was intended from the language of the contract, you may consider the circumstances surrounding the entering into the contract or other legal doctrines that I will provide to you in these instructions. See "Effect of Contract Language," State of Connecticut, Judicial Department, Civil Jury Instructions, 3-15, revised to December 31, 1998; *Tomlinson v. Board of Education*, 226 Conn. 704, 722 (1993); *Southern New England Contracting Co., v. Norwich Roman Catholic Diocesan Corp.*, 175 Conn. 197, 199 (1978).

To determine the intent of the parties, you may interpret the contract language in light of the situation of the parties and the circumstances surrounding the making of the contract. You also may consider the motives of the parties and the ends that they sought to accomplish by their contract.

However, the circumstances surrounding the making of a contract, the purposes that the parties sought to accomplish and their motives cannot prove an intent contrary to the plain meaning of the language. *United Technologies Corp. v. Groppo*, 238 Conn. 761, 772-73 (1996); *Zullo v. Smith*, 179 Conn. 596, 601 (1980); *Fairfield v. D'Addario*, 149 Conn.

358, 362 (1962); *Colonial Discount Co. v. Avon Motors, Inc.*, 137 Conn. 196, 200 (1950).

Here PDI has alleged and Andrews has disputed that the press strips that Andrews delivered to PDI were nonconforming to the obligations of the contract. To that end, PDI has claimed four grounds on which the press strips were nonconforming and you have heard evidence from PDI in support of those grounds and from Andrews in dispute of those grounds. I will instruct you as to the law for each of those four grounds.

A0067324.WPD

Proposed Instruction No.4--Express Warranty:

A buyer bears the burden of proving the existence of an express warranty. *See, Vezina v. Nautilus Pools, Inc.*, 27 Conn. App. 810, 610 A.2d 1312 (1992). Here PDI must prove the existence and terms of any express warranty.

A seller can create an express warranty that the goods will conform to the seller's affirmation or promise by any affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain. C.G.S. §42a-2-313(1)(a). A seller can also create an express warranty that the goods will conform to the seller's description of the goods by any description of the goods that is made part of the basis of the bargain. C.G.S. §42a-2-313(1)(b).

In this case, PDI has claimed that Andrews breached an express warranty in the parties' agreement that Andrews would provide press strips of sufficient quality that would enable PDI to meet its contractual obligations to the U.S. Mint; that the coating that Andrews proposed to use on the strips was superior to coatings previously used by PDI and would be adequate to meet the Mint's requirements, and that the colors applied by Andrews to the press strips would match the colors required by the Mint. You have heard evidence offered by PDI in support of its claims and evidence offered by Andrews in dispute of them. PDI has offered evidence that Andrews affirmed or promised that the press strips would be free of several types of defects and that those affirmations or promises that related to the press strips became part of the basis of the bargain.

If you find that PDI has proven by a preponderance of evidence that Andrews made such express warranties, then you must find that such warranties were part of the obligations of the parties' contract.

<u>Proposed Instruction No. 5--Implied Warranty of Fitness for Particular Purpose</u>

Here PDI has also pled in its Counterclaim that Andrews breached an implied warranty of fitness of the press strips for a particular purpose. An implied warranty of fitness for a particular purpose is created where the seller at the time of contracting has reason to know any particular purpose for which the goods are required and that the buyer is relying on the seller's skill or judgment to select or furnish suitable goods. C.G.S. §42a-2-315; *Beech Aircraft Corp. v. Flexible Tubing Corp.*, 270 F. Supp. 548 (D. Conn. 1967). This implied warranty arises when the seller has reason to know of any particular purpose for which the goods are required and that the buyer relies on the seller's skill or judgment to select or furnish suitable goods. *See*, C.G.S. §42a-2-315.

Here, you have heard evidence that PDI furnished Andrews with information as to the particular purpose for which it required the press strips, including the requirements of the U.S. Mint for the inserts to be manufactured with Andrews' press strips. Additionally, you have heard evidence that PDI relied on Andrews' expertise and judgment to supply press strips that met the requirements of the purposes to which they would be put.

Should you find that Andrews had reason to know that the press strips were required for the particular purpose of the commemorative coin inserts and the U.S. Mint's specifications for those inserts and that PDI relied on Andrews' skill or judgment to provide suitable strips, then you must find that Andrews impliedly warranted the strips for that purpose and, further, that such warranties were part of the obligations of the parties' contract.

Proposed Instruction No.6--Implied Warranty of Merchantability:[1]

PDI has further alleged in its Counterclaim that Andrews breach an implied warranty that the press strips were "merchantable". Goods are merchantable if they "(a) pass without objection in the trade under the contract description…(c) are fit for the ordinary purposes for which such goods are used; and (d) run, within the variations permitted by the agreement, of even kind, quality and quantity within each unit and among all units involved…" *See*, C.G.S. §42-2-314(2).

A warranty of merchantability is created by implication. "[A] warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind." C.G.S. §42-2-314(1).

Here, PDI has alleged that Andrews is a merchant that deals with goods of the kind subject of the parties' agreement. The burden is on the buyer, here PDI, to establish any breach with respect to the goods accepted. *See*, C.G.S. §42a-2-607(4); *Superior Wire & Paper Products, Ltd., v. Talcott Tool & Machine, Inc.*, 184 Conn. 10, 15, 441 A.2d 43 (1981). PDI has presented evidence to show that Andrews held itself out to PDI as a merchant in goods of the type of press strip subject of the parties' agreement and held itself out to PDI as knowledgeable and skillful in print management services including commercial print, business forms, labels and direct response. PDI also presented evidence to show that it relied on Andrews' expertise and knowledge of the kind of press strips required by PDI to fulfill the Mint's purposes.

If you find that Andrews is a merchant in goods of the kind which was the subject of the parties' agreement, then you must find that Andrews impliedly warranted as merchantable the press strips it delivered to PDI.

If you so find, you then must determine whether Andrews breached the implied warranty of merchantability when it delivered the press strips to PDI.

---

[1]Andrews reserves its right to object to this jury instruction as being the inapplicable legal standard for the facts in the case at bar.

A0067324.WPD

Proposed Instruction No. 7: Breach of Contract[2]

PDI pled that Andrews breached the parties' contract by delivery to PDI of defective press strips. Goods are "conforming" or "conform to the [parties'] contract" where they are in accordance with the parties' obligations under the contract. *See*, C.G.S. §42a-2-106(2). PDI, as the buyer here, has the burden to prove that goods it accepted were nonconforming. C.G.S. § 42a-2-607(4).

The seller is obliged to deliver goods subject of the contract in accordance with the contract. *See*, C.G.S. §42a-2-301. A seller breaches a sales contract where the seller fails to fulfill its obligations under the contract. For the buyer to be entitled to remedies for breach of contract, i.e., delivery of nonconforming goods, the nonconformity must be "substantial" or "material"; See, *Franklin Quilting Co. v. Orfaly*, 1 Conn. App. 249, 251 n.3, 252 (1984); See, also, White & Summers, Uniform Commercial Code, 2d. Ed. §8-3.

You have heard evidence that PDI offered that press strips it received from Andrews were nonconforming to the parties' contract; you have heard, also, evidence that Andrews offered that press strips it delivered were conforming to the parties' contract. You must decide whether PDI has shown by a fair preponderance of the evidence that press strips were nonconforming and that such nonconformity was substantial or material to the Andrews' obligations under the contract.

---

[2]Andrews objects to this instruction insofar as it believes additional language should be added to the first paragraph as follows: **A buyer that uses goods in its business is unable to establish that those goods are nonconforming and unfit for their intended purpose,** and to the second paragraph as follows: **You must also decide whether PDI has used the press strips in its business** and cites as its authority *Sun Hill Industries, Inc. v. Kraftsman Group, Inc.*, **27 Conn.App. 688, 698 (Conn. App. 1992).**

Proposed Instruction No. 8--Weight to be Given to Expert Testimony:

In this case, you have heard from several witnesses who have been presented to you as experts. These witnesses include:

1. Neal F. Kelly

2. Mary A. McCann

3. Theresa Renner

4. Derek Johnson

5. Nancy Plowman

A. The rules of evidence ordinarily do not permit witnesses to testify as to opinions or conclusions, since these issues are for our determination. An exception to this rule exists as to those witnesses whom we call "expert witnesses". Witnesses who, by education and/or experience, have become expert in some art, science, profession o calling may state an opinion as to relevant, material matter, in the area in which they profess to be experts, and may state the reasons for their opinion. You have been presented with a good deal of such testimony by expert witnesses in this case.

B. Now, in weighing and considering the testimony of these experts, in determining to what extent you will attach weight and credence to the opinion which they gave, you are to apply to them the same rules that you apply to any witness, insofar as it relates to their interest, bias or prejudice, appearance and demeanor upon the witness stand, frankness and candor and so forth.

C. The value of which is to be attached to their testimony, and the weight to be accorded it, will of course, depend upon many other things. It will depend on the actual skill possessed by the expert, on the experience he or she has had, and the training he or she has had. Has this training and experience been long or brief? Has it been practical or

theoretical, has it been under circumstances where reasonably and logically this so-called expert has acquired skill peculiar and greater than others, or otherwise? You must ask yourself whether the experience and expertise of this particular witness is relevant to all of the issues on which he or she has testified. In considering the testimony of these experts you should ask yourself what opportunity the experts had had to analyze and study the facts and circumstances of this particular case and for what length of time have they engaged in this study. I would caution you that an expert is only permitted to testify in his or her area of expertise. If an expert testifies and offers an opinion as to any matter that is outside of his area of expertise, you are to disregard that testimony.

D.  Those are the matters to which you are to give such consideration as your good judgment suggests. And finally, as the expert witnesses testify before you, you must ask yourself whether they have produced before you a rational and reasonable basis in support of the opinions which they offer; as they testify, does their mode of testifying indicate acre, skill, intelligence and candor, or does it in any fashion or any particular issue indicate the contrary? When these witnesses have undertaken to support their opinion by relating it to some basis in the facts of this case, is the basis which they bring forth in support of that particular opinion, reasonable and logical in your minds as a sound basis for such opinion?

> See, *Hartford Federal Savings & Loans Assn. v. Tucker*, 196 Conn. 172, 183, *cert. denied*, 474 U.S. 920 (1985); *Weinstein v. Weinstein*, 18 Conn. App. 622, 631 (1989); *Siladi v. McNamara*, 164 Conn. 510, 513 (1969); *United Aircraft Corp. v. International Assn. of Machinists*, 169 Conn. 473, 483 (1975); *Sharp v. Wyatt*, 31 Conn. App. 824, 843 (1993), *aff'd.* 230 Conn. 12, (1994); *Grayson, Wofsey, Rosen, Kweskin & Kuriansky*, 231, Conn. 168, 189 (1994).

Proposed Instruction No. 9: Notice of Nonconformity

You have heard evidence as to PDI's claim that the goods delivered by Andrews did not conform to the requirements of the parties' contract.

If you have found that PDI has proven by a preponderance of evidence that Andrews delivered press strips to PDI that were substantially nonconforming to Andrews' obligations under the parties' contract, then, before you consider what remedies PDI may have for Andrew's breach, you must consider whether PDI gave timely and sufficient notice to Andrews.

A buyer who accepts nonconforming goods must notify the seller that the goods are nonconforming. See, C.G.S. §42a-2-607(3)(a); *Sun Hill Industries, Inc., v. Kraftsman Group, Inc.*, 27 Conn. App. 688, 610 A.2d 684, *cert. denied*, 223 Conn. 913, 614 A.2d 830 (1992). Such notice is a condition precedent to the buyer's right to recover damages for a breach of contract. *De Lucia v. Coca-Cola Bottling Co. of Conn.*, 139 Conn. 65, 89 A.2d 589 (1952).

The buyer's notice of breach must be timely. He must give notice to the seller of a breach within a reasonable time after the buyer discovered or should have discovered any breach. C.G.S. §42a-2-607(3). What is a reasonable time for taking any action depends on the nature, purpose and circumstances of such action. C.G.S. §42a-1-204(2); *Conte v. Dwan Lincoln-Mercury, Inc.*, 172 Conn. 112, 122, 374 A.2d 144 (1976); *Beech Aircraft Corp. v. Flexible Tubing Corp.*, 27 F. Supp. 548 (D. Conn. 1967).

"Reasonable" time within which a buyer must give notice should take into consideration the purposes of the notice requirement. The notice given ought to be timely enough to enable the seller to make adjustments or replacements or to suggest opportunities to cure any breach so as to minimize the buyer's losses and reduce the sellers' liability to the buyer. C.G.S. §42a-2-607, Comment 4; White & Summers, Uniform Commercial Code, 2d Ed., §11-10, p. 421.

You must decide whether PDI has proven by a preponderance of evidence that it gave notice to Andrews within the "reasonable time" required. You have heard evidence that PDI contacted Andrews almost immediately after PDI received notice from the U.S. Mint and kept Andrews apprised of the status of PDI's investigation. You have also heard that PDI solicited Andrews' assistance in a quest to determine the cause of the marrings to the coin inserts PDI had manufactured with Andrews' press strips and delivered to the U.S. Mint. You have also heard evidence that Andrews offered that these contacts, solicitation and investigation did not constitute timely notice by PDI. You must decide whether, on the basis of a preponderance of evidence, PDI gave timely notice to Andrews.

You must also decide whether any notice that PDI gave to Andrews was substantively sufficient. A buyer's notice of nonconformity to a seller is sufficient where the notice alerts the seller that the transaction is still troublesome rather than particularize the buyer's entitlement to damages. C.G.S. §42a-2-607, Comment 4; *Stelco Industries, Inc., v. Cohen*, 182 Conn. 561, 565-66, ___ A.2d ___ (1980); White & Summers, Uniform Commercial Code, 2d Ed., §11-10, p.425. You have further heard evidence that PDI did not know the cause of the defects until examination of the press strips by its expert consultants. You have also heard evidence that Andrews offered that it did not know of the basis of PDI's claim of nonconformities until it received PDI's counterclaim to Andrews' complaint.

If you decide that PDI has proven by a preponderance of evidence that it gave timely and sufficient notice to Andrews, then you may go on to consider what remedies PDI may be entitled to. If you decide that PDI has not proven by a preponderance of evidence that it gave timely and sufficient notice to Andrews, then you cannot find that PDI is entitled to remedy for any breach of contract by Andrews with regard to press strips that PDI accepted.

Proposed Instruction No. 10--Notice of Latent Defect:

In your consideration of the circumstances to determine whether the notice of breach that PDI gave to Andrews was timely, you may consider the latent nature of the defect.

A "latent defect" is one that is not readily apparent at time of tender or discoverable by reasonable inspection at time to tender. See, e.g., *Hinchliffe v. American Motors Corp*, 184 Conn. 607, 440 a.2d 810 (1981), on remand, 39 Conn. Supp. 107, 471 A.2d 980.

If you find that the defect was latent, then you must decide whether that latent character extended the "reasonable time" within which PDI was required to give notice of the breach to Andrews. Where a defect in goods accepted is latent, the time within which notice of defect or breach must be given runs from when the defect was or should have been discovered. *See, Beech Aircraft Corp. v. Flexible Tubing Corp.*, 270 F. Supp. 548 (D. Conn. 1967). If you find that the defect was latent, then you must decide whether PDI gave notice to Andrews within a reasonable time from the time of PDI's discovery of the defect or with in a reasonable time from when PDI should have discovered the defect.

Proposed Instruction No. 11 - Stipulation:

Any facts to which the parties have stipulated, either in writing or orally during the course of the trial, you will treat as proven. Similarly, if you have been told in open court that a party has agreed not to dispute certain evidence presented by the other, you will treat that evidence as proven as well. It is still up to you to decide what weight or importance those fact or evidence have, if any, in deciding the issues in the case. *See, Berchtold v. Maggi,* 191 Conn. 266, 272 (1983); *Beizer v. Goepfert,* 28 Conn. App. 693, 706, cert. denied, 224 Conn. 901, 507 U.S. 937 (1992).

The parties have stipulated and, therefore, you are instructed to assume that a contract existed between them for Andrews to deliver to PDI 4 million press strips, Andrews invoiced PDI to pay the sum of $127,537.28 exclusive of freight., and, to date, PDI has tendered no payment but acknowledged the sum is due and owing. I reiterate that it is your function to determine that the failure by PDI to pay the sum was under the circumstance wrongful, whereby Andrews would be entitled to interest.

A0067324.WPD

Proposed Instruction No. 12—Damages

A.    Andrews' Complaint

The parties have stipulated that PDI accepted the press strips. Therefore, PDI owes Andrews for the Press Strips at the contract rate even if you find that they are nonconforming. General Statutes §42a-2-607(1); *Sun Hill Industries, Inc. v. Kraftsman Group, Inc.*, 27 Conn.App. 688, 694 (Conn. App. 1992). The parties have stipulated that this amount is $127,537.28 exclusive of freight.

In addition to damages, you may award Andrews interest. This is intended to compensate Andrews for the loss of use of money that was not paid when it was due. To award interest, you must find that Andrews is entitled to an award of damages in the first place, and you must find under all of the circumstances that PDI wrongfully detained money due to Andrews. There is no hard and fast rule for what constitutes wrongful detention. The question is whether justice requires that the prevailing party be paid interest for the loss of use of money.

B.    PDI's Counterclaim

If you have found that Andrews breached its contract with PDI and/or any warranties therein, then you must determine whether PDI was damaged as a proximate result of such breach or breaches and whether Andrews is liable to pay damages to PDI to compensate for its losses.

A buyer "…may recover as damages for any nonconformity of tender the loss resulting in the ordinary course of events from the seller's breach as determined in any manner which is reasonable." *See*, C.G.S. §42a-2-714. Such damages may include "incidental damages" that may include expenses the buyer reasonably incurred in inspection, receipt, transportation and care and custody of goods rightfully rejected, any commercially reasonable charges, expenses or commissions in connection with effecting cover and any other reasonable expense incident to the seller's breach. Such damages may also include

"consequential damages" which may include (a) any loss resulting from general or particular requirements and needs of which the seller at the time of contracting had reason to know and which could not reasonably have been prevented by cover or otherwise..." CGS §42a-2-715. *See, Waterbury Petroleum Products, Inc., v. Canaan Oil & Fuel Co., Inc.,* 193 Conn. 208 (1984).

In your consideration of damages, you are instructed that the general rule in breach of contract cases is that the award of damages is designed to placed the injured party, so far as can be done by money, in the same position as that which he would have been in had the contract been performed. A party may recover "general" contract damages for any loss that "may fairly and reasonably be considered [as] arising naturally, i.e., according to the usual course of things, from such breach of contract itself. *See, Hadley v. Baxendale,* 9 Ex. 341, 354, 156 Eng. ep. 145 (1854).

Your are further instructed that "[u]nless they are too speculative and remote, prospective profits are allowable as an element of damage whenever their loss arises directly from and as a natural consequence of the breach..." *See, West Haven Sound Development Corporation v. City of West Haven,* 201 Conn. 305, 319-20, 514 A.2d 734 (1986). To determine the amount of prospective profits as an element of damages, PDI need only show such profits by reasonable certainty of proof; any uncertainty may be dispelled by the same degree of proof as is required in other civil actions, that is, the amount may be determined approximately upon reasonable inferences and estimates..." *See, West Haven Sound Development Corporation v. City of West Haven,* 201 Conn. 305, 320-21, 514 A.2d 734 (1986).

Here PDI has introduced evidence that, following the U.S. Mint's rejection of a substantial number of the coin inserts PDI manufactured with Andrews' press strips, the U.S. Mint cancelled its contract with PDI and later advised PDI that the U.S. Mint would no longer consider PDI as a vendor to the Mint of coin inserts. PDI claims to have lost profits

it expected to realize had it continued as a vendor to the Mint. PDI has presented evidence of the value of those lost profits in the approximate amount of 8.3 million dollars through the testimony of Theresa Renner and Derek Johnson and Andrews has presented evidence disputing those amounts. If PDI has proven to you by a preponderance of evidence and with reasonable certainty upon reasonable inferences and estimates the amount of such lost profits, then you may award PDI damages.

Proposed Instruction No. 13--Set Off:[3]

PDI has claimed that it is entitled to a set off of any money to which you may find Andrews is entitled to upon its complaint. A "set-off" is a claim filed by a defendant against a plaintiff in which the defendant seeks to cancel the amount due from him or to recover an amount in excess of the plaintiff's claim against him. Black's Law Dictionary, 6th ed., p.1372, citing Fed. R. Civil P. 13. A defendant may plead a set-off in his answer or special defense to a claim against him for money owed. C.G.S. §52-97. "A buyer may notify a seller of the buyer's intention to deduct all of any part of damages to which the buyer may be entitled and resulting from any breach of the parties' contract from any part of the price that the buyer may still owe to the seller." C.G.S. §42a-2-717.

You have heard evidence that PDI, here the defendant and buyer, has suffered financial losses as a result of breach of contract by Andrews, here the plaintiff and seller.

---

[3]The parties anticipate that this proposed instruction will refer to verdict forms and special interrogatories. Given the recent stipulation between the parties which has been incorporated in the current set of documents together with the potential stipulation on the $127,537.28, the parties have found it difficult in the drafting of the set-off instruction and verdict form. It is the objective, however, to simplify the foregoing and submit a supplemental agreement for approval by the Court which will contain verdict form(s), special interrogatories and a more extensive set-off instruction.

A0067324.WPD

**PDI May Introduce the Following Exhibits at Trial:**

1.  U.S. Mint Contract TM-HQ-037
2.  November 24, 1999 email from Lauran Sullivan to Normand Thibaudeau Re: 5 Coin Insert Drawings.
3.  December 1, 1999 email from Lauran Sullivan to Normand Thibaudeau Re: First Article Samples for Blue Inserts.
4.  W.E. Andrews, Inc.'s one-page quotation #61661 dated December 17, 1999.
5.  Purchase Order No. 3642 dated December 21, 1999 from PDI to Andrews for press proof 50 State Quarters red and blue.
6.  January 14, 2000 email from Lauran Sullivan to Normand Thibaudeau Re: Blue Insert - color standard.
7.  January 24, 2000 correspondence from Samuel Savage to Normand Thibaudeau.
8.  January 27, 2000 email from Lauran Sullivan to Normand Thibaudeau.
9.  February 10, 2000 email from Lauran Sullivan to Normand Thibaudeau.
10.  February 11, 2000 email from Ken Boris to Normand Thibaudeau Re: Red Inserts.
11.  February 11, 200 email from Normand Thibaudeau to Lauran Sullivan Re: Red Insert Delivery.
12.  March 21, 2000 email from Sam Savage to Normand Thibaudeau Re: Red Inserts.
13.  March 23, 2000 email from Savage to Normand Thibaudeau Re: March 29th visit.
14.  March 27, 2000 email from Sam Savage to Normand Thibaudeau Re: March 29th visit.
15.  March 29, 2000 email from Sam Savage to Normand Thibaudeau.
16.  March 31, 2000 email from Sam Savage to Normand Thibaudeau Re: Press Sheet from March 29th visit.
17.  April 28, 2000 letter from Lauran Sullivan to Normand Thibaudeau.
18.  May 2, 2000 email from Lauran Sullivan to Normand Thibaudeau Re: Red Inserts.
19.  May 5, 2000 email from Sam Savage to Normand Thibaudeau Re: Red Inserts.
20.  May 10, 2000 email from Bill Sybalsky to Normand Thibaudeau.
21.  May 23, 2000 email from Lauran Sullivan to Normand Re: First Article Approval.
22.  Plastic Development, Inc.'s Purchase Order #36572 dated May 23, 200.
23.  December 9, 1999 Mint Delivery Order #3 under Contract TM-HQ-037 Re: Blue Inserts.
24.  March 2, 2000 Mint Delivery Order #4 under Contract TM-HQ-037 including change order.
25.  March 2, 2000 Mint Delivery Order #5 under Contract TM-HQ-37
26.  May 25, 2000 Mint Delivery Order #6 under Contract TM-HQ-037
27.  July 13, 2000 Invoice #169946 from PDI to U.S. Mint.
28.  August 2, 2000 Invoice #170250 from PDI to U.S. Mint.

29.    August 2, 2000 Invoice #170251 from PDI to U.S. Mint.

30.    August 18, 2000 Invoice #170614 from PDI to U.S. Mint.

31.    August 18, 2000 Invoice #170615 from PDI to U.S. Mint.

32.    July 24, 2000 email from Sam Savage to Normand Thibaudeau Re: Inspection results for first shipment.

33.    August 4, 2000 Memorandum Re: Rejection of Shipment No. 2.  Smudge was the major defect.

34.    August 8, 2000 Memorandum Re: Rejection of Shipment No. 3.  Smudge was the major defect.

35.    August 9, 2000 email from Latonia Johnson to Normand Thibaudeau Re: Shipment No. 3's defects.

36.    August 9, 2000 email from Sam Savage to Normand Thibaudeau Re: Shipment No. 3's defects.

37.    August 24, 2000 Memorandum Re: Rejection of Shipment No. 4 (Red Coin Dollar Foam Insert).  Smudge was the major defect.

38.    August 24, 2000 Memorandum Re: Rejection of Shipment No. 4 (Red 5- Coin Quarter Foam Insert).  Smudge was the major defect.

39.    August 31, 2000 letter from the U.S. Mint canceling PDI's contract.

40.    U.S. Mint Contract TM-K-115 dated October 25, 2000.

41.    September 1, 2000 letter from Jeff Jacobs at Kelstar International to John Vesia Re: findings regarding the U.S. Mint styrene sheets.

42.    September 28, 2000 Report from Cervelli Enterprises, Inc., inclusive of photographs.

43.    October 23, 2000 letter from Tim Pigden at Kelstar International to John Vesia Re: styrene sheets

44.    November 7, 2000 letter from John F. O'Brien at Sun Chemical to John Vesia Re: press sheet strips.

45.    November 7, 2000 Sun Chemical Memo re: U.S. Mint Silver Proof Sets inclusive of pictures

46.    November 21, 2000 letter from Brad E. Evans at GATF to John Vesia Re: Coin Inserts.

47.    February 1, 2001 letter from John F. O'Brien at Sun Chemical to John Vesia Re: Sutherland Rub Test on state quarter proof sets.

48.    February 6, 2001 letter from John F. O'Brien to John Vesia.

49.    Curriculum Vitae of Neal F. Kelly

50.    Final Report of Neal F. Kelly dated May 6, 2003

51.    Curriculum Vitae of Mary A. McCann

52.    Final Report of Mary A. McCann

53.    Micrographs of defective inserts taken by Mary A. McCann (7 total)

54.    Enlargement of micrographs taken by Mary A. McCann depicting the defects

55.    Enlarged micrographs taken by Mary A. McCann depicting the layers of the inserts.

56.    Graphics illustrating details of the layers depicting the micrographs referred to in 53 - 55.

57.    Engagement Report from Theresa Renner inclusive of curriculum vitae

58.    Report of Theresa Renner.

59.    Curriculum vitae of Derek Johnson.

60.    Report of Derek Johnson.

61.    Press Sheet Strip.

62.    Red Insert.

63.    Blue Insert.

64.    Red Insert with smudge.

65.    Correspondence from Ward, Fisher & Company, LLP

66.    Correspondence from Ward, Fisher & Company, LLP, dated 9/17/02

67.    Job Data Collection Form Job No. 29044

68.    Job Tickets for Order 29044 together with data on red and blue printing

69.    Invoice #13371 from Andrews to PDI dated July 29, 2000

70.    Invoice #13412 from Andrews to PDI dated July 31, 2000