UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| W.E. ANDREWS CO., INC., <br> a Georgia Corporation, <br><br> Plaintiff, <br><br> v. <br><br> PLASTIC DEVELOPMENT, INC., <br> a Rhode Island Corporation, <br><br> Defendant. | ) <br> ) <br> ) <br> ) <br> ) <br> ) No. 302-CV-00599 (CFD) <br> ) <br> ) <br> ) <br> ) <br> ) |

### PLAINTIFF'S MOTION *IN LIMINE* TO EXCLUDE
### THE OPINIONS OF DEREK JOHNSON

Plaintiff, W.E. ANDREWS CO., INC ("Plaintiff"), moves this Court *in limine* to exclude certain testimony and opinions of Defendant's expert, Derek Johnson. In support of its motion, Plaintiff states as follows:

**I.   Background**

1.  On May 29, 2003, Defendant produced the report (Exhibit 'A') of its expert, Derek Johnson ("Johnson") and disclosed Johnson as an expert pursuant to Fed. R. Civ. P. 26.

2.  On June 26, 2003, Plaintiff deposed Johnson.

3.  In both is report and at his deposition, Johnson offered opinions on the present value of Defendant's future lost profits from 2004 through 2009.

4.  As shown below, these opinions should be barred.

**II.  Standard of Admissibility**

5.  In order to be admissible, all expert testimony must be relevant and reliable. Fed.R.Evid. 702; *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 147 (1999).

A0063570.WPD

6. The proponent of expert testimony has the burden of demonstrating by a preponderance of the evidence that the testimony satisfies the above elements. *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 592 n. 10 (1993).

7. In addition, the court must decide whether the proffered evidence is relevant. Evidence is relevant if the testimony "ha[s] any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable that it would be without the evidence." *Amorgianos v. National R.R. Passenger Corp.*, 303 F.3d 256, 264 (2nd Cir. 2002). Thus, even reliable testimony may be barred if it does not meet the standard for relevance. *Daubert*, 509 U.S. at 597.

8. Conversely, even relevant testimony may be barred if it does not satisfy Rule 702's reliability analysis. *Amorgianos*, 303 F.3d at 267. In this inquiry, the district court should consider the indica of reliability identified in Rule 702, namely 1) that the testimony is grounded on sufficient facts or data; 2) that the testimony is the produce of reliable principles and methods; and 3) that the witness has applied the principles and methods reliably to the facts of the case. *Id.* at 265, quoting Fed.R.Evid. 702. For a court to determine whether an expert's testimony is reliable, the court must make a preliminary assessment of whether the reasoning or methodology underlying the testimony is valid. *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 592-93 (1993). The factors to make this determination include: 1) whether the theory or technique can be and has been tested; 2) whether the theory or technique has been subjected to peer review and publication; 3) a technique's known or potential rate of error and the existence and maintenance of standards controlling the technique's operation; and 4) whether a particular technique or theory has gained general acceptance in the relevant scientific community. *Amorgianos*, 303 F.3d at 266, citing

*Daubert*.

9. While the *Daubert* inquiry is a flexible one, it is critical that an expert's analysis be reliable at every step to warrant admissibility. *Id.* at 267. Thus, "*any* step that renders the analysis unreliable under the *Daubert factors renders the expert's testimony inadmissible.*" *Id.* quoting *In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717, 745 (3rd Cir. 1994).

## III. Johnson's calculations are based on Theresa Renner's unreliable opinions

10. Johnson's report states:

The scope of this engagement was to coordinate with Ms. Theresa L. Renner, CPA, CVA and prepare present value calculations of lost profits based on Ms. Renner's adjustments to the cost and revenue calculations prepared by PDI. (Johnson Report, Attachment A)

11. Thus, Johnson was asked to perform present value calculations of lost profits from 2004 through 2009.

12. As Johnson plainly concedes, he took no part in calculating Defendant's lost profits, but rather relied upon Renner's calculations to compute a present value of those purported lost profits. (Johnson dep. at 12).

13. Thus, the reliability of Johnson's present value calculations rests, not only upon his own methodology, but on that of Renner's also. In other words, if Renner's methodology is unreliable - and it is - Johnson's opinions necessarily are unreliable also.

14. As outlined in the motion to bar Renner's testimony, Renner's opinions are based on wholly unreliable methods, lack any factual basis and should be barred for multiple reasons. Therefore, if the Court bars Renner's testimony, Johnson's opinions must also be barred as unreliable under *Daubert*.

15. If the Court sees fit to permit Renner to testify, then at a minimum, it should bar Johnson from testifying as to the present value of lost profits for 2009. As Renner conceded at her deposition, the mint state quarter program only runs through 2008, to extend the program through 2009 would require additional legislation and she is unsure as to what the status of such legislation is. Accordingly, there is absolutely no foundation whatsoever for Renner or Johnson to testify that Defendant suffered lost profits in 2009.

WHEREFORE, Plaintiff requests that the Court grant his Motion *in Limine* and

a) bar Derek Johnson from offering any opinions as to the present value of Defendant's future lost profits, pursuant to *Daubert*;

b) bar Derek Johnson from offering any opinions as to the present value of Defendant's future lost profits for 2009, pursuant to Rule 702 of the Federal Rules of Evidence; and

c) granting such other and further relief as the Court deems just and equitable.

Dated: April 19, 2004                              Respectfully submitted,

                                                   W.E. ANDREWS CO., INC.

                                                   By: _____
                                                   Jeffrey L. Widman, ct24236
                                                   Shaw Gussis Fishman Glantz
                                                     Wolfson & Towbin LLC
                                                   321 N. Clark, Suite 800
                                                   Chicago, IL 60610
                                                   Ph: (312) 541-0151
                                                   Fax: (312) 980-3888

Derek M. Johnson
University of Connecticut
Department of Economics, U-1063
341 Mansfield Rd.
Storrs, Connecticut 06269

May 29, 2003

**By Overnight Courier**
Neil F. Murphy, Jr., Esq.
Murphy Laudati & Kiel, P.C.
The Exchange Suite 360
270 Farmington Avenue
Farmington, CT 06032

    Re:    W.E. Andrews Co., Inc. vs. Plastics Development, Inc.

Dear Attorney Murphy:

In connection with the above referenced matter, I am providing you with the following information regarding an analysis of interest rates in connection with lost profits calculations.

## Opinions

My opinions on matters relevant to this case and the basis and reasons for those opinions are described in Attachment A.

## Information Considered and Relied Upon

In preparing this report and forming the opinions expressed in Attachment A, I have considered the items of information disclosed in Attachment A-1. I have also considered my knowledge, training and professional experience as an economist.

## Qualifications

A summary of my qualifications, including all publications within the last ten years, is presented in Attachment B.

## Compensation

I am being compensated at my normal hourly rate for this type of work of $200.00 per hour. My compensation is not contingent on the outcome of this litigation.



EXHIBIT A

Neil F. Murphy, Jr.
May 29, 2003
Page 2, 2003

**Other Testimony**

I have not testified as an expert at trial or by deposition within the preceding four years.

**Other Matters**

If I were to give testimony, I would also use available graphs, charts, slides and/or other demonstrative evidence to aid the Court.

Very truly yours,

Derek M. Johnson

*Attachment A –Notes to Opinions*

## NOTES

1. At the date of this report, the trial date for this action was unknown. For the purpose of the report, however, December 31, 2003 has been used as the pre-trial cut-off date and post trial is assumed to commence on January 1, 2004. It may be necessary to adjust the discount rate used for the present value calculation and interest rate used for pretrial damages once trial date is known.

2. Adjustments for the effect of changes in the Producer Price Index-Industrial Commodities were considered but not incorporated into the estimate of lost profits. The ten-year average (1993-2002) of the Producer Price Index-Industrial Commodities was 1.6%. PDI's cost structure was assumed to match changes in the Producer Price Index-Industrial Commodities. As a result, there would be no material changes in the lost profit calculations.

## *Attachment A-1 – Information Considered*

1. Assumption of red and blue insert sales (years 2001-2009) provided by PDI.

2. PDI Financial Statements.

3. Depositions of Sam Savage and Robert Campbell.

4. Pricing Term of Contract between Plastic Development, Inc. and United States Mint.

5. Federal Reserve Publications (e.g., Statistical Releases-H.15—daily and historical interest rates for U.S. Treasury Bills and Notes, various maturities).

6. Standard & Poor's –Historical and Current Credit and Equity Indices and Investment Grade Credit Spreads.

7. United States Department of Labor, Department of Labor Statistics, Historical and Current Consumer Price and Producer Price Indices.

8. Various economics and finance treatises and journals, periodicals and mutual fund portfolios.

9. Expertise of Ms. Theresa Renner, CPA, CVA with regard to developing cost and revenue structures and interest rate and discount rate determinations.

*Attachment-B*

*Curriculum vitae*

**Derek M. Johnson**
University of Connecticut
Department of Economics, U-1063
341 Mansfield Rd.
Storrs, Connecticut 06269
(860) 486-8279

## PROFESSIONAL EXPERIENCE

**VISITING PROFESSOR AND LECTURER OF ECONOMICS**  August 2000-present
University of Connecticut, Storrs, Connecticut

**ADJUNCT PROFESSOR OF ECONOMICS**  Sept. 1999-May 2000
Saint Joseph College, West Hartford, Connecticut

**PARTNER**  Dec. 1994-present
Ruben, Johnson & Morgan, P.C., Hartford, Connecticut

## EDUCATION

**UNIVERSITY OF CONNECTICUT**, Storrs, Connecticut
    ABD, Economics, June 2000

**EMORY UNIVERSITY SCHOOL OF LAW**, Atlanta, Georgia
    Juris Doctor Degree, May 1985

**UNIVERSITY OF WASHINGTON**, Seattle, Washington
    Master of Arts in Economics, June 1981

**UNIVERSITY OF WASHINGTON**, Seattle, Washington
    Bachelor of Arts in Economics with honors, August 1979

## PUBLICATIONS

D. Johnson and H. James, "Regulatory Environments and Economic Change: An Examination of Boundary, Conduct and Attribute Regulation in the Telecommunications Industry," <u>Working Paper</u>, (June 2002)

D. Johnson and H. James, "Why are there Explicit Contracts of Employment?" <u>University of Missouri CORI Working Paper No.01-06</u> (September 2001)

D. Johnson and H. James, "Just-Cause Provisions, Severance Pay and the Efficiency Wage Hypothesis," <u>Managerial and Decision Economics</u>, Vol. 21(2), 2000, pp. 83-88

D. Johnson and H. James, "Mergers Testing, Redefining Monopolies," <u>Hartford Business Journal</u>, (July 20, 1998)

D. Johnson, "A Simple Welfare Proposal," <u>The Wall Street Journal</u>, (January 11, 1996)

D. Johnson, "NAFTA: A Generalized Perspective," <u>The Bankruptcy Yearbook and Almanac (1994)</u>, The New Generation Research (1994).

D. Johnson, "Vietnam's Foreign Investment Laws: A Overview for Businesses Planning to Invest," <u>Vietnam Market Watch</u>, Vol. II, No. 4 (April 1994).

D. Johnson, "Rent Assignment Weathers Failure to Enforce," <u>Bankruptcy Strategist</u>, Vol. XI, No. 2, (Dec. 1993).

## AWARDS

1996 W. Harris Carter Teaching Award, University of Connecticut

Academic Scholarship Recipient, Emory University School of Law 1982-185

1982 Henry T. Beuchel Teaching Award, University of Washington

Academic Scholarship Recipient, University of Washington, 1979-1982

Shell Oil Company Scholarship, 1997

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT
CIVIL ACTION NO:    302-CV-00599(CFD)

```
- - - - - - - - - - - - - - - - -X
W.E. ANDREWS CO., INC., A         :
GEORGIA CORPORATION,              :
                PLAINTIFF         :
                                  :
VS                                :
                                  :
PLASTIC DEVELOPMENT, INC., A      :
RHODE ISLAND CORPORATION,         :
                DEFENDANT         :
- - - - - - - - - - - - - - - - -X
```

**ORIGINAL**

Deposition of DEREK JOHNSON taken at the offices of Tyler, Cooper & Alcorn, LLP, CityPlace, 35th Floor, Hartford, Connecticut 06103-3488, before San Edwards, RPR, LSR, Connecticut License No. 0057, a Professional Shorthand Reporter and Notary Public, in and for the State of Connecticut on June 26, 2003, at 4:36 p.m.

DEL VECCHIO REPORTING SERVICES, LLC
PROFESSIONAL SHORTHAND REPORTERS

117 RANDI DRIVE                 100 PEARL ST., 14th FL.
MADISON, CT 06443               HARTFORD, CT 06103-4506
    203 245-9583                     800 839-6867

EXHIBIT B

1  coordinated with Theresa Renner to prepare present
2  value calculations of lost profits which were based
3  on Ms. Renner's adjustments to cost and run new
4  calculations that PDI prepared.
5          Correct?
6     A    That is correct.
7     Q    Ms. Renner testified that you played no
8  part in calculating those lost profits.
9          Is that an accurate statement?
10    A    Yes, it is.
11    Q    Okay.  You basically took the number that
12 she came up with for lost -- for future lost profits
13 and calculated the present value of those lost
14 profits.
15    A    That's essentially correct.  Yes.
16    Q    Okay.  And the number that you worked
17 from, I believe, was --
18              (THERE IS AN INTERRUPTION.)
19         MR. WIDMAN:  Come in.
20         Thank you very much.
21 BY MR. WIDMAN:
22    Q    Six million four hundred seventy-six
23 thousand five hundred forty-four dollars?
24    A    Excuse me.  If you could just point
25 precisely where you are.