UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| W.E. ANDREWS CO., INC. ) <br> a Georgia Corporation, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> PLASTIC DEVELOPMENT, INC. ) <br> a Rhode Island Corporation, ) <br> ) <br> Defendant. ) | <br> <br> <br> <br> <br> <br> CIVIL ACTION NO: 302-CV-00599 (CFD) <br> <br> <br> <br> <br> SEPTEMBER 17, 2004 |

**POST ARGUMENT MEMORANDUM TO PLASTIC DEVELOPMENT'S
MOTION IN *LIMINE* TO EXCLUDE TESTIMONY OF NANCY PLOWMAN**

      The Defendant, PLASTIC DEVELOPMENT, INC. ("PDI") hereby submits this supplemental memorandum in support of its Motion to preclude the testimony of Nancy Plowman.

**INTRODUCTION**

      On September 1, 2004, the Court heard argument on PDI's Motion in *Limine* to preclude the testimony of Nancy Plowman[1]. As noted in the original motion and at oral argument, PDI submits that Ms. Plowman is not qualified to render opinion testimony as to the reports of Neal Kelly and Mary McCann. Furthermore, such testimony is not proper opinion testimony under applicable evidentiary standards.

---

[1] Since Ms. Plowman did not testify at the September 1, 2004 hearing, PDI continues to base its argument on her initial report dated June 24, 2003, a copy of which is attached hereto as Exhibit 1, her final report dated July 14, 2003, a copy of which is attached hereto as Exhibit 2 and her deposition of July 24, 2003, a copy of which is attached hereto as Exhibit 3.

PDI also seeks to preclude Ms. Plowman's opinion as to the improper packaging technique used by PDI because Ms. Plowman's investigation into the product was inadequate in that she failed to conduct any tests and her opinion was predicated upon inaccurate and irrelevant information provided by her client. Therefore, her opinion is unreliable.

**ARGUMENT**

    A.  **Attack on PDI Experts Issue**

In the summary of opinions contained in her final report, Ms. Plowman states:

"Finally it is my opinion that the opinion of both Ms. Mary A. McCann and Mr. Neal F. Kelly are based on improper methodologies that are neither standard in the coating and printing industries nor capable of being evaluated and/or repeated. And furthermore, that both experts lack the expertise required to offer their opinions. As a result, many of their conclusions are incorrect".

This opinion appears to be a lay regurgitation of the elements of *Daubert* with absolutely no support other than Ms. Plowman's alleged "expertise". This statement is not an opinion at all; it is simply an attack on the credentials and methods that may have been employed by PDI's experts. The credibility of PDI's experts, their qualifications and their expertise in their fields, is not fodder for another expert's "opinion", but are areas of inquiry which are the subject of counsel's proper cross-examination of these witnesses.

Ironically, it is Ms. Plowman who lacks the expertise to criticize Mr. Kelly's credentials in chemistry, adhesive coating and quality control and Ms. McCann's expertise in microscopy.[2] A review of Ms. Plowman's curriculum vitae and her deposition show that for two years after graduating Westbrook High School, Westbrook, Maine, she

---

[2] Ms. Plowman's primary criticism of Ms. McCann was her failure to use a Scanning Electron Microscope (SEM). The evidence will show that Ms. McCann could not have achieved her objective and observe colors should she have used an SEM. (Plowman dep. at p. 134, lines 17-23)

2

worked at a local paper company as a lab technician (Plowman dep. at p. 15, line 12). While working full-time for this company she attended the University of Maine, Portland and, in 1976 obtained a degree with a major in mathematics and minor in chemistry from the University of Maine, Portland (Plowman dep. at p. 17, line 9, p. 183, lines 11-12). Academically, she cites no other credential. (Plowman dep. at p. 183, lines 13-19). Rather, she has spent her career in the graphic arts industry.  PDI suggests that it is for this reason, as well as irrelevant and inaccurate information provided by her client that Ms. Plowman ignored the purpose of the coating, to wit, to protect the inserts. Specifically, in her deposition the following occurred:

```
2    Q.  What enhances the rub resistance?
3    A.  The aqueous coating.
4    Q.   All right.  Anything else?
5    A.   Anything else an aqueous coating does?
6    Q.  No, by way of the purpose of this coating
7  on this product.
8    A.  My understanding?
9    Q.  Yes.
10   A.   My understanding was the sheen or the look
11  of the gloss.
12   Q.  Okay.  Conversely, did you understand that
13  the product was to have protected the printing and
14  styrene from harm that could come from usage,
15  travel, scars, mars and the like?
16   A.  Am I aware of that?
17   Q.  Yes.
18   A.  No.  (Plowman dep. at p. 190, lines 2-18).
```

Furthermore, Andrews' attempts to have Ms. Plowman comment on the testimony of PDI's experts should not be allowed from an evidentiary perspective.  It is axiomatic that the court may exercise its discretion in precluding an expert from offering an opinion on facts testified to by other witness, most particularly as to the testimony of other experts.  In re *Barber's Estate*, 63 Conn. 393 (1893); *DiBiase v. Garnsey*, 106 Conn.

86 (1927); *Trasacco v. New York N.H. & H.R Co.*, 113 Conn. 355, 363-364 (1931); and *Bagre v. Daggett Chocolate Co.*, 126 Conn. 659, 664 (1940). To seek the "opinion" of one expert as to the testimony of other witness and/or other experts is improper from an evidentiary standpoint. An expert should not be permitted to simply attack the opinion of another expert but rather should testify to those facts for which they are particularly qualified based on their own "expertise".

      B.      **The Insufficient Coating Issue**

Ms. Plowman also opined, in direct contradiction to PDI's experts, that inadequate coating was not the inherent problem with the inserts. She bases her opinion on the fact that PDI accepted the product from W.E. Andrews, converted it into finished product and shipped it out to the U.S. Mint. At her deposition, Ms. Plowman offered the following testimony:

```
20     Q.  We have confirmed your opinion that
21  insufficient application of aqueous coating was not
22  the problem that cause the defect?
23     A.  Correct.
24     Q. And you have come to that conclusion by
                   ***
1   indicating that the printed styrene was accepted by
2   PDI, presumably incorporated within that acceptance
3   was an inspection, and after it converted it to
4   inserts another inspection passed?
5      A. Yes. (Plowman dep. at p. 107, lines 20-24, p. 108, lines 1-5)
```

Not only does this opinion echo the mantra of her client, but it completely ignores the reality that the defects in the product when they left W.E. Andrews were latent and could not be discerned by the naked eye. The simple acceptance of the product by PDI, would not lead to the conclusion that there were no defects in the coating. See, for example *Bagre v. Daggett Chocolate Co.*, 126 Conn. 659, 664 (1940)(foreign substance in a

piece of candy went undetected until eaten by Plaintiff).   In fact, the precise cause of the defect is depicted in the micrographic photography which the Court accepted as exhibits and examined during the testimony of Neal Kelly at the September 1, 2004 hearing.

    C.  **Ms. Plowman's  Packaging Opinion**

In her initial report, Ms. Plowman characterized samples furnished to her by Andrews as "having been handled quite a bit since they had been shipped back under unknown conditions to W.E. Andrews" and "I was also given an empty corrugated box 'tray' used by PD to package and ship the finished pieces".   Given these items she claimed to have "an understanding of the nature of the complaint…"., and went on to opine that the scratches to the inserts were the result of "transit damage" .  At no time did Ms. Plowman conduct tests of any kind on any of the items in her possession. Rather, in general terms she claimed that "in my experience transit damage can occur for a number of reasons" and went on to say that the reason in the immediate case was "packaging ".  In its entirety she supported her theory with the following paragraph:

> "Of particular concern to me is the method of packaging used by PD to ship the pieces to the Mint.  Again, I have not seen the condition of the job as received at the Mint, but the tray used for packaging the individual pieces for shipment (from PD to the Mint) has interior dimensions that are oversized for the pieces.  The interior dimensions of the tray are 5 1/8" x  3". As you know, the dimension of the pieces is 4 ¾" x 2 ¾".  Furthermore, the trays were then stacked "on end", placing the pressure on the flat surfaces of the pieces.  Even if the head space was filled with a compressible material this interior dimension allows for significant movement."

As admitted in this paragraph, Ms. Plowman has no knowledge as to how the inserts were actually packaged or how they actually arrived at the U.S. Mint.  Ms. Plowman acknowledges that she didn't even know if the "headspace was filled with compressible material".   Andrews has, in its pleadings, and through Ms. Plowman, put

5

into issue a chain of custody claim. When Ms. Plowman was canvassed as to her chain of custody as to the samples furnished to her, she had no idea as to the source. (Plowman dep. at p. 56, lines 3-7).

In her subsequent and final report dated July 14, 2004, Ms. Plowman says nothing further as it relates to her opinion that "packaging" was the problem which caused scratches on the inserts. Rather, Ms. Plowman merely supplemented her original comments by attaching a diagram of the insert packaging. Moreover, at page 2 of her final report, with regard to the "packaging" opinion, Ms. Plowman states that she had considered certain enumerated information in reaching her "packaging" opinion, which information did not include any independent testing but rather relied on her "extensive knowledge of offset printing".

Interestingly, at her deposition, Ms. Plowman stated that she first learned of this case when she was contacted by Attorney Widman on March 31, 1003. On Friday, May 9, 2003, Ms. Plowman drove to the Andrews plant in Manchester, Connecticut and met with John Vesia for about an hour. The following Monday she met with Attorney Widman in Chicago where he furnished Ms. Plowman with copies of the final reports of Neal Kelly and Mary McCann. She did no testing and had no other notes in connection with her June 24, 2003 report. At some point she did place a five minute phone call to Jeff Jacobs at Kelstar to specifically address three things. (Plowman dep. at p. 67, line 8). Between June and July 14, 2003, the date of her final report, with the exception of reviewing the depositions of Neal Kelly and Mary McCann and an excerpt from Normand Thibaudeau's deposition, the only other thing that she did to reach her opinions was to maintain contact with Attorney Widman in critiquing the reports of Neal Kelly and Mary

6

McCann. As noted in her deposition, Ms. Plowman testified as follows:

>  25    Q.  What did you do by way of testing with
>  ***
>  1   regard to this case?
>  2       A.  We didn't do any testing.
>  3       Q.  Is there a reason for that?
>  4       A.  Yes.
>  5       Q.  And that reason is?
>  6       A.  That the samples are - - it's too far after the
>  7   fact, too long after the fact.  The samples are too
>  8   old.
>  9       Q.  So in your opinion accurate testing cannot
>  10  be conducted?
>  11      A.  Yes.  (Plowman dep. at p. 28, line 24, p. 29, lines 1-11)

Based on the foregoing, Ms .Plowman's opinion is not based on any independent knowledge she would have been able to curry as a result of her own testing of the materials at issue, rather she simply concluded that the inserts were damaged as a by-product of PDI's packaging. The opinion is not based on any scientific or technological data and is simply a stark conclusion based on Ms. Plowman's "extensive knowledge". Ms. Plowman's bare conclusions do not satisfy the *Daubert* standards.

WHEREFORE, the Defendant in the above entitled action respectfully requests that this Court grant its Motion in *Limine* precluding the testimony of Nancy Plowman.

DEFENDANT ,
PLASTIC DEVELOPMENT, INC.


_____
Neil F. Murphy, Jr., ct08381
Murphy, Laudati & Kiel, P.C.
270 Farmington Avenue, Ste. 360
Farmington, CT 06032
Telephone: (860) 674-8296
Facsimile: (860) 674-0850

## CERTIFICATION

  I hereby certify that a copy of the foregoing was sent via facsimile and regular mail on September 17, 2004, to all counsel of record, as set forth below:

William S. Fish, Jr., Esq.
Attorney Elizabeth K. Andrews
Matthew A. Sokol, Esq.
Tyler, Cooper & Alcorn, L.L.P.
P.O. Box 1936
205 Church Street
New Haven, CT  06509

James R. Byrne, Esq.
Tyler Cooper & Alcorn, LLP
185 Asylum Street
CityPlace – 35th Floor
Hartford, CT 06103-3488


Jeffrey L. Widman, Esq.
Shaw Gussis Fishman Glantz Wolfson & Towbin, L.L.C.
321 N. Clark Street, Ste. 800
Chicago, IL 60610

          _____
          Neil F. Murphy, Jr., Esq., ct08381