**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| W.E. ANDREWS CO., INC., <br> a Georgia Corporation, | ) <br> ) <br> ) | |
| Plaintiff, | ) <br> ) | |
| v. | ) <br> ) | No. 302-CV-00599 (CFD) |
| PLASTIC DEVELOPMENT, INC., <br> a Rhode Island Corporation, | ) <br> ) <br> ) | |
| Defendant. | ) | |

**PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION *IN LIMINE***
**TO EXCLUDE THE OPINIONS OF NANCY PLOWMAN**

Plaintiff, W.E. ANDREWS CO., INC ("Plaintiff"), states the following as its response to Defendant's motion *in limine* to preclude the opinions of Plaintiff's expert, Nancy Plowman:

**I.**   **Background**

1.   On July 14, 2003, Plaintiff produced the report of its expert, Nancy Plowman ("Plowman") and disclosed Plowman as an expert pursuant to Fed. R. Civ. P. 26.

2.   On July 24, 2003, Defendant deposed Plowman.

3.   In both her report (Exhibit 'A') and at her deposition (Exhibit 'B'), Plowman opined that inadequate packaging by Defendant was the proximate cause of the transit markings on the coin holders at issue in this case.  Plowman also criticized Defendant's experts, Neal Kelly and Mary McCann for offering opinions on the cause of the scratches that were based on testing done on the coin holders more than two years after they were manufactured.  Plowman's criticisms were twofold: First, she criticized the methodology of both Kelly and McCann.  Second, she opined that the testing by Kelly and McCann was not reliable because it was conducted over two years after the samples

A0073267.WPD

had been manufactured.

4.      On April 19, 2004, Defendant file a motion *in limine* seeking to bar Plowman's opinion arguing that Plowman is not qualified to render criticisms of Kelly or McCann and that her opinions as to the cause of the scratches is not reliable. The motion contained no citations, supporting references or case law.

5.      On September 1, 2004, the Court heard oral argument on the motion and granted Defendant leave to supplement its prior, unsupported motion.

6.      On September 17, 2004, Defendant filed its supplemental brief, citing for the first time to excerpts of Plowman's deposition that were not referenced at the hearing on the motion.

7.      As shown below, none of the arguments Defendant has raised in its original motion, at the hearing on the motion, or in its supplemental brief have merit. Plowman's opinions should not be barred since she is sufficiently qualified to render opinions regarding the cause of transit markings. Moreover, her opinions and criticisms of Kelly and McCann satisfy the requirements of Fed.R.Evid. 702; *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 592 n. 10 (1993); *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 147 (1999) and their progeny.

## II.      Standard of Admissibility

8.      In order to be admissible, all expert testimony must be relevant and reliable. Fed.R.Evid. 702; *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 147 (1999).

9.      The proponent of expert testimony has the burden of demonstrating by a preponderance of the evidence that the testimony satisfies the above elements. *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 592 n. 10 (1993).

10.      In addition, the court must decide whether the proffered evidence is relevant.

Evidence is relevant if the testimony "ha[s] any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable that it would be without the evidence." *Amorgianos v. National R.R. Passenger Corp.*, 303 F.3d 256, 264 (2nd Cir. 2002). Thus, even reliable testimony may be barred if it does not meet the standard for relevance. *Daubert,* 509 U.S. at 597.

11.     Conversely, even relevant testimony may be barred if it does not satisfy Rule 702's reliability analysis. *Amorgianos*, 303 F.3d at 267. In this inquiry, the district court should consider the indica of reliability identified in Rule 702, namely 1) that the testimony is grounded on sufficient facts or data; 2) that the testimony is the produce of reliable principles and methods; and 3) that the witness has applied the principles and methods reliably to the facts of the case. *Id.* at 265, quoting Fed.R.Evid. 702. For a court to determine whether an expert's testimony is reliable, the court must make a preliminary assessment of whether the reasoning or methodology underlying the testimony is valid. *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 592-93 (1993). The factors to make this determination include: 1) whether the theory or technique can be and has been tested; 2) whether the theory or technique has been subjected to peer review and publication; 3) a technique's known or potential rate of error and the existence and maintenance of standards controlling the technique's operation; and 4) whether a particular technique or theory has gained general acceptance in the relevant scientific community. *Amorgianos*, 303 F.3d at 266, citing *Daubert*.

### III.    Plowman is sufficiently qualified to render opinions relating to transit markings

12.     One of Defendant's arguments is that Plowman is not qualified to criticize McCann because she "acknowledged that she is not experienced in the field of microscopy and that her

experience in viewing printing through a microscope is limited." (Defendant's motion, pp. 2-3).
Defendant also claims that Plowman is unqualified to criticize Kelly because she "is not an expert
in chemistry, adhesive coating or quality control" (Defendant's motion, p.3).   Simply put,
Defendant's contentions are wrong.

13.     Defendant's sole claim is that Plaintiff breached the parties' contract and its related
warranties by providing it with press strips that had an insufficient amount of coating applied to them
by Plaintiff.

14.     As Plowman's Curriculum Vitae (Exhibit 'C') and deposition testimony establish,
she is, contrary to Defendant's contention, an expert in the coating and printing field.  In fact, she
may be the country's most preeminent expert in analyzing print production related problems.  To wit:
Plowman incorporated Nancy Plowman Associates ("NPA") in 1986, a company that is a graphic
arts testing and consulting service that specializes in handling print production related problems,
including analysis of all components of the offset printing process, including inks, papers, and
aqueous coatings (Plowman CV).  Plowman worked for 17 years in the Research and Development
facility of a paper company, with 9 years devoted to paper coating technology and chemistry
(Plowman CV).  She has a minor degree in Chemistry (Plowman CV).  She has spent over 30 years
in the printing and coating industry analyzing printings and coatings, including the use of
microscopy. (Plowman CV, Plowman Dep. at 177)  She has written scores of articles on topics such
as printing, coating, quality control, measuring the thickness of coating and coating adhesion
problems (Plowman CV).

15.     Moreover, contrary to Defendant's claims, Plowman is well-qualified to critique
McCann's use of a microscope since she has over 30 years of experience in viewing and analyzing

coatings with the use of a microscope (Plowman Dep. at 177). Furthermore, she has ample experience in quality control as it relates to coatings and an extensive background in Chemistry which includes a minor Chemistry degree from the University of Maine, 9 years in the Chemistry department of a paper company (Plowman CV). In short, this case was tailor-made for Plowman's expertise.

16.     Furthermore, and in any event, Plowman need not even be a chemistry expert to criticize Kelly's opinions. Kelly's opinions have nothing to do with the chemical composition of the coating. Rather, Plowman's criticisms of Kelly's methodology are based on: a) his failure to utilize an accepted industry test such as the Sutherland Rub Test; b) his reliance on testing that was done two years after the printing and coating process; and c) his incorrect calculations of the coat weight, which Plowman confirmed were incorrect.

17.     Plowman is a well-renowned expert in the field of coatings and the cause of damage to products with coating. Moreover, she has an expertise in chemistry, quality control, coatings and microscopy. Therefore, her criticisms of Kelly and McCann should be admissible at trial. Moreover, for Defendant to argue, with no supporting authority, that "an expert should not be permitted to simply attack the opinion of another expert" (Defendant's "Post Argument Memorandum") is preposterous. Rule 26 of the Federal Rules of Civil Procedure expressly provides for the use and disclosure of rebuttal expert testimony.

18.     Defendant also repeatedly attacks the fact that Plowman bases much of her opinions on her 30 years of experience analyzing printing and coating problems. However, this attack is without merit since, it is well-established, that an expert may be qualified to render an expert opinion based on his or her own experience. *Kumho Tire*, 526 U.S. at 152. Thus, this criticism fails as well.

**IV.     Plowman's opinions relating to the cause of the transit markings are admissible**

19.     Defendant also claims that Plowman should not be permitted to testify as to the cause of the transit markings because "she herself had never tested the product nor did she have the product tested by others" (Defendant's motion, p.3)  In so arguing, Defendant fails to comprehend that one of Plowman's opinions is that Kelly and McCann improperly relied on testing of the press strips two years after they were manufactured to form opinions of the condition of the coating at the time of their manufacture in 2000.  Indeed, one of Plowman's opinions is that it is improper to test a product after such a length of period of time (Plowman Report, Plowman Dep. at 180-82, 195).  Defendant extracts selective portions of Plowman's deposition, which on their own are misleading, to argue that her opinion is not based on any scientific data.  However, in doing so, it ignores numerous portions of her testimony that shows otherwise.

20.     In support of her opinion, Plowman cited to a multitude of factors to support her conclusion that accurate testing cannot, and should not, be conducted two years later.  For example, Plowman stated that the coating's chemical composition could change over time based on its moisture content (Plowman Dep. at 181).  Moreover, she testified that the only manner in which one could reliably test whether such a change occurred would be to test the exact wet coating and the exact ink used on the original batch of styrene during the original manufacturing process (Plowman Dep. at 181-82).  Plowman cited other potential problems such as a change in the product's tensile (Plowman Dep at 182) as well as the fact that the handling of the aqueous coating by human hands could alter the coating's thickness due to the heat and oils from a person's hands (Plowman Dep. at 188).

21.     While Defendant makes much ado about the fact that Plowman did not conduct her

own testing, this is consistent with her expert opinion that such testing would not be, indeed is not, reliable given the aforementioned factors. Had Plowman performed her own testing, she would have been contradicting her opinion that such efforts would be fruitless. Furthermore, Defendant does not, no doubt because it cannot, cite to any authority for the proposition that actual testing is a prerequisite for an expert opinion. In fact, such is not the case. *See Martin v. Shell Oil Co.*, 180 F.Supp.2d 313 (D. Conn. 2002)(expert's criticisms of reports performed by others is admissible despite expert not conducting his own test).

22.    Defendant also attacks Plowman's testimony that she was unaware that the purpose of the coating for this particular job was to protect the printing and styrene from harm. However, counsel's exact question was whether Plowman understood "that the product was to have protected the printing and styrene from harm that could come from usage, travel, scars, mars and the like". (Plowman Dep. at 190/12-15). While Plowman answered this confusing and ambiguous question in the negative, she plainly testified that she knew the coating's purpose was to enhance rub resistance. (Plowman Dep. at 189/24 - 190/3). Moreover, and in any event, Defendant has failed to show how this has any bearing on the admissibility of Plowman's criticisms of Kelly's and McCann's opinions or her own opinion that the packaging caused the scratches.

23.    Defendant also criticizes the amount of time that Plowman spent in performing her analysis and reaching her conclusions. Defendant seems to be arguing, again with no supporting authority, that an arbitrary minimum amount of time must be spent by an expert before his or her opinion may be admitted at trial. Obviously, this issue merely affects the opinion's weight, not its admissibility. Accordingly, it is not a proper basis to exclude an expert opinion.

24.    Finally, in attacking Plowman's conclusion that acceptance and inspection by PDI

of the product supported her opinion that the coin holders were not coated improperly, Defendant

cites to a 1940 state court decision, *Bagre v. Daggett Chocolate Co.*, 126 Conn. 659 (1940), which

merely discussed the doctrine of *res ipsa loquitur*. *Bagre* obviously did not discuss expert opinions

in the context of *Daubert*, nor did the court bar an expert's opinion. Thus, its holding is inapposite

to the current motion.

## V.    <u>Conclusion</u>

Plowman is well-qualified to render opinions regarding the cause of the scratches on the coin

holders. Her entire adult life has been devoted to the analysis of printing and coating-related

problems, including transit markings, which are at issue here. For Defendant to argue otherwise is

absurd, given Plowman's background and experience. Furthermore, she has testified in great detail

as to why it is her opinion that Kelly and McCann have reached unreliable opinions regarding the

cause of the transit markings. In support of this testimony, Plowman has relied on her 30 plus years

of experience in the coating and printing field, which she is entitled to do. Her opinion that the cause

of the scratches resulted from improper packaging is based on her review of the product, the

packaging, her understanding of their shipping conditions, her discussions with the client and the fact

that such scratches were not apparent after shipment from Andrews to PDI. The fact that Defendant

disagrees with this conclusion does not render the opinion inadmissible. Defendant's motion should

be denied.

Respectfully submitted,

W.E. ANDREWS CO., INC.

By: _____

     Jeffrey L. Widman, ct24236
     Shaw Gussis Fishman Glantz
       Wolfson & Towbin LLC
     321 N. Clark, Suite 800
     Chicago, IL 60610
     Ph: (312) 541-0151
     Fax: (312) 980-3888

## CERTIFICATION OF SERVICE

I hereby certify that a copy of the foregoing was mailed, postage prepaid, this 24th day of September 2004, to the following counsel of record, pro se parties of record, and/or individuals:

Neil F. Murphy, Jr.
Murphy, Laudati & Kiel, P.C.
The Exchange
270 Farmington Avenue, Suite 360
Farmington, CT   06032

Jeffrey L. Widman
Shaw, Gussis, Fishman, Glantz & Wolfson
1144 W. Fulton Street, Suite 200
Chicago, IL 60607

James R. Byrne