UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| W.E. ANDREWS CO., INC.,<br>a Georgia Corporation,<br><br>                Plaintiff,<br><br>v.<br><br>PLASTIC DEVELOPMENT, INC.,<br>a Rhode Island Corporation,<br><br>                Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)  No. 302-CV-00599 (CFD)<br>)<br>)<br>)<br>)<br>)<br>) |

**MOTION FOR BIFURCATED TRIAL**

Plaintiff, W.E. Andrews Co., Inc., pursuant to Rule 42(b) of the Federal Rules of Civil Procedure, moves this Court for entry of an Order bifurcating this matter into separate trials on the issues of liability and damages. In support of its Motion, Plaintiff respectfully states as follows:

1. On May 29, 2003, Plastic Development Inc. ("PDI") disclosed Theresa Renner as an expert witness and produced her report in which she opined on PDI's purported damages.

2. On June 26, 2003, plaintiff deposed Renner.

3. Discovery in this matter closed on July 5, 2003.

4. This matter was originally set for trial on September 15, 2004.

5. On September 1, 2004, this Court continued the trial date.

6. On that date, the Court also heard oral argument on the parties' motions *in limine*.

7. Prior to that hearing, Andrews had filed a motion to bar Theresa Renner's opinions as well as a motion to bar evidence of future lost profits.

8. Immediately prior to the hearing, PDI advised Andrews that it would supplement Renner's opinions with a revised expert report containing different lost profits calculations. Based

on oral representations that Renner's revised report greatly reduced PDI's damage claims, but having not seen the revised report, Andrews agreed to withdraw its motion to bar Renner without prejudice to its ability to re-argue the motion after seeing the revised report.

9. At the hearing, Andrews' counsel also advised the Court that it wished to reserve its right to re-depose Renner and revisit the question of whether it would hire its own expert to rebut her new, more conservative, opinions and, in the event, the Court denies Andrews' motion to bar evidence of future lost profits.[1]

10. The Court advised counsel that it should file a motion to do so and referred the matter to a mediator in an effort to resolve the dispute.

11. On October 14, 2004, approximately one month after the original trial date and over fifteen months after discovery closed, PDI produced the supplemental report of Theresa Renner, in which she drastically departed from her original opinions and lost profits calculations.

12. In November, 2004, the parties attended a court ordered mediation conducted by the Honorable Raymond Green. Unfortunately, Judge Green's exhaustive efforts proved fruitless and the parties did not reach a settlement agreement.

13. Mediation having failed, Andrews now wishes to bifurcate the trial into liability and damage issues to expedite the trial on and resolve the issue of liability and to avoid the time and expense of hiring an expert.

14. Pursuant to Fed.R.Civ.P. 42(b), the decision to bifurcate a trial into liability and damages phases is within the discretion of the trial court. *Katsaros v. Cody*, 744 F.2d 270, 278 (2nd

---

[1] Originally, Andrews did not retain an expert to rebut Renner's opinions, which it viewed as outrageous and in violation of *Daubert*.

Cir. 1984). Bifurcation is appropriate where the evidence offered on two different issues will be wholly distinct, or where litigation of one issue may obviate the need to try another issue. *Vichare v. Ambac Inc.*, 106 F.3d 457, 466 (2nd Cir. 1996). Moreover, it is clearly convenient to await consideration of relief where a finding of liability is a *sine qua non* for such damages or other award. *Evans v. State of Connecticut*, 168 F.R.D. 118, 120 (D.Conn. 1996).

15. When determining whether to bifurcate a trial, courts consider the following factors: (a) the likelihood that bifurcation, or the failure to bifurcate, would result in the risk of substantive prejudice, such as the jury not deciding any aspect of the case strictly on the merits of the evidence; (b) the likelihood that bifurcation would enhance juror comprehension of the issues presented in the case; (c) the likelihood that significant resources would be saved by bifurcation; (d) the likelihood that significant resources would be wasted by bifurcation, as a result of having to repeat presentation of two proceedings of the same evidence; and (e) the potential that, after bifurcation and trial, the remaining issues might be resolved by motion or settlement. *Union Carbide Corp. v. Montell N.V.*, 28 F.Supp.2d 833, 837 (S.D.N.Y. 1998). All of these considerations favor the bifurcation of liability and damages in this case.

16. First, bifurcation would save significant resources in that, the parties could avoid another round of depositions relating to Renner's revised expert report as well as obviate the need for Andrews to hire an expert to rebut Renner's revised report, which it wishes to do, if necessary. It would also eliminate several witnesses and days from the pending trial since the initial jury would not need to hear testimony regarding damages.

17. Second, bifurcation would enhance the jury's understanding of the issues in this complex case. Where, as here, damage testimony is unrelated to testimony concerning liability, it

is preferable to have the jury concentrate on issues of liability without being aware of damage figures. *Kushner v. Hendon Const., Inc.*, 81 F.R.D. 93 (M.D.Pa.1979). This trial involves the highly technical fields of printing and coating with which the jurors are unlikely to be familiar. Jurors will be forced to learn new concepts in areas in which they are likely to be totally inexperienced. Trying the issues of liability and damages together might decrease juror comprehension. Conversely, if separate juries are allowed to concentrate on one complex set of issues at a time, jury confusion and frustration will likely be reduced.[2]

18.  In addition, there is little, if no, likelihood of repetition or waste of resources because the damages issues are not inextricably interwoven with the liability issues. Moreover, it is extremely unlikely that there will be any repetition of the evidence presented during the liability phase of the trial and no witness would be called for both parts of the trial.

19.  Furthermore, if the trial is bifurcated, the Court could defer issuing rulings on the motion relating to lost profits until the end of the liability portion of the trial, thus reducing the Court's burden.

20.  Separate trials on liability and damage issues are both appropriate and warranted in this case, since it will expedite the trial of the issue of liability in this matter, potentially save significant expenses for both parties, benefit the jury by allowing it to focus on fewer issues and less evidence when it deliberates, presents the possibility of avoiding several days of trial, and would dispose of the Court's need to rule on other motions *in limine* at this juncture.

---

[2] Separate juries for liability and damage phases of trial is, not only constitutionally permissible, but preferred where, as here, bifurcation would eliminate the need for a significant portion of discovery. *See Simon v. Philip Morris Inc.*, 200 F.R.D. 21 (E.D.N.Y. 2001) *See also EEOC v. Nebco Evans Distribution,* 1997 WL 41623 at *2 (D. Neb. 1997).

21. Alternatively, if the Court does not wish to bifurcate this matter, Andrews requests that it be granted leave to re-depose Renner and for an appropriate time to produce a rebuttal expert report, pending the Court's ruling on Andrews' motion *in limine* to bar evidence of future lost profits.

WHEREFORE, Plaintiff respectfully request that this Court enter an Order bifurcating this trial into separate trials relating to liability and, if necessary, damages or, alternatively, for leave to conduct additional discovery related to lost profits, including time to produce a rebuttal expert report.

Respectfully submitted,

W.E. ANDREWS CO., INC.

By: _____
William S. Fish, Jr., ct05349
Elizabeth K. Andrews, ct20986
Tyler, Cooper & Alcorn, LLP
P.O. Box 1936 – 205 Church St.
New Haven, CT 06509
Telephone:   (203) 784-8500
Facsimile:   (203) 777-1181
Email: eandrews@tylercooper.com

## CERTIFICATE OF SERVICE

    Elizabeth K. Andrews, an attorney, certifies that she served a true and correct copy of the foregoing by facsimile and regular mail on this 24th day of February, 2005.



A0084574.WPD