UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| W.E. ANDREWS CO., INC. ) | |
| a Georgia Corporation, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CIVIL ACTION NO. 3:02-CV-00599 (CFD) |
| ) | |
| PLASTIC DEVELOPMENT, INC. ) | |
| a Rhode Island Corporation, ) | |
| ) | |
| Defendant. ) | |

**OBJECTION TO W.E. ANDREWS' MOTION FOR BIFURCATED TRIAL**

The defendant/counterclaim plaintiff, PLASTIC DEVELOPMENT, INC. ["PDI"], respectfully objects to the plaintiff's motion to bifurcate the trial of this matter.

**A.    Considerations in connection with a claim for separate trials.**

Fed. R. Civ. Pro. 42(b) provides as follows:

**Separate trials.** The court, in furtherance of convenience or to avoid prejudice, or when separate trials will be conducive to expedition and economy, may order a separate trial of any claim, cross-claim, counterclaim, or third-party claim, or of any separate issue or of any number of claims, cross-claims, counterclaims, third-party claims, or issues, always preserving inviolate the right of trial by jury as declared by the Seventh Amendment to the Constitution or as given by a statute of the United States.

In *Svege v. Mercedes-Benz Credit Corporation*, 329 F.Supp.2d 283, 284 (D.Conn. 2004), the Court commenced its analysis of the defendants' motion to bifurcate with a recital of the general principles involved therewith:

The decision to bifurcate a trial into phases is a matter that lies within the sound discretion of the trial court. Fed.R.Civ.P. 42(b); *see Simpson v. Pittsburgh*

*Corning Corp.*, 901 F.2d 277, 283 (2d Cir.1990) ("[L]eav[ing] the mode of trial ultimately to the discretion of the district judge."); *see also Getty Petroleum Corp. v. Island Trans. Corp.*, 862 F.2d 10, 15 (2d Cir.1988); *Witherbee v. Honeywell, Inc.*, 151 F.R.D. 27 (N.D.N.Y.1993). In exercising that discretion, this Court begins its analysis with the Advisory Committee's admonition that "separation of issues for trial is not to be routinely ordered." Advis. Comm. Notes, 1996 Amend., Fed.R.Civ.P. 42(b). Ordinarily, a jury is entitled to hear all of the evidence and deliberate over all of the issues in the case at one time. *See, e.g., Miller v. Am. Bonding Co.*, 257 U.S. 304, 307, 42 S.Ct. 98, 66 L.Ed. 250 (1921) ("[T]he general practice is to try all the issues in a case at one time."); *Monaghan v. SZS 33 Assoc.*, 827 F.Supp. 233, 245 (S.D.N.Y.1993).

Bifurcation is thus the exception, not the rule, and the movant must justify bifurcation on the basis of the substantial benefits that it can be expected to produce. *See Dallas v. Goldberg*, 143 F.Supp.2d 312, 315 (S.D.N.Y.2001).

"Bifurcation . . . is a procedural device to be employed only in exceptional circumstances." *U.S. v. 43.47 Acres of Land*, 45 F.Supp.2d 187, 190 (D.Conn. 1999). "[T]he separation of issues for trial is not to be routinely ordered." *ABB Industrial Systems, Inc. v. Prime Technology, Inc.*, 32 F.Supp.2d 38, 43 (D.Conn. 1998), quoting *Morse/Diesel v. Fidelity Deposit Co. of Maryland*, 763 F.Supp. 28, 35 (S.D.N.Y.1991) [internal quotation marks omitted]. "Piecemeal litigation is not favored, and bifurcation is inappropriate in cases where the facts are so inextricably interwoven that separation is impossible or at least manifestly unfair." *ABB Industrial Systems*, 32 F.Supp.2d at 43, quoting *Morse/Diesel*, 763 F.Supp. at 35 [internal brackets, quotation marks and ellipses omitted].

"The interests served by bifurcated trials are convenience, negation of prejudice, and judicial efficiency." *Vichare v. AMBAC Inc.*, 106 F.3d 457, 466 (2d Cir. 1996). Phrased differently, when a party moves to bifurcate certain issues, the relevant considerations include: ""(1) whether the claims arise out of the same transaction or occurrence; (2) whether the claims present some common questions of law or fact; (3) whether settlement of the claims or judicial economy would be facilitated; (4) whether prejudice would be avoided if severance were granted;

2

and (5) whether different witnesses and documentary proof are required for the separate claims." *Wausau Business Ins. Co. v. Turner Const. Co.*, 2001 WL 963943 at * 2 (S.D.N.Y.) [internal quotation marks and citations omitted]; *see also Svege,* 329 F.Supp.2d at 284 ("On a case-by-case basis, the Court should examine, among other factors, whether bifurcation is needed to avoid or minimize prejudice, whether it will produce economies in the trial of the matter, and whether bifurcation will lessen or eliminate the likelihood of juror confusion."); *U.S. v. 43.47 Acres of Land*, 45 F.Supp.2d at 190-91 ("Bifurcation is only appropriate where (1) separate trials would promote judicial economy and convenience; or (2) a single trial would prejudice the interests of a party.").

B.  **Separate trials would result in significant duplication of efforts, waste of judicial resources, significantly increased litigation expenses, and inconvenience to non-party witnesses.**

Separate trials are inappropriate in this case, because both trials would require much of the same evidence, significant judicial resources would be wasted by the duplication of effort, much more attorney time would be required for two trials, and the non-party witnesses would be seriously inconvenienced by having to appear twice.

"In deciding whether to bifurcate, courts often try to establish if the issues would involve the same witnesses or not." *ABB Indus. Systems*, 32 F.Supp.2d at 43, quoting *Morse/Diesel,* 763 F.Supp. at 35 [internal brackets, quotation marks and ellipses omitted]. In the instant case, the issues of liability and damages would involve the same witnesses, including two employees of the U.S. Mint and their counsel who would be required to travel to Hartford from Washington, D.C. each time they were to testify. Neither the U.S. Mint nor these individual witnesses are not parties to this action; however, the testimony of these witnesses is vital to the resolution of the issues presented. PDI respectfully submits that imposing on these witnesses the burden of

requiring them to travel to Connecticut on two separate occasions is inappropriate in the absence of a compelling and unavoidable reason for doing so. Andrews has failed to establish any such reason. Therefore, the inconvenience that would be imposed upon these essential witnesses warrants denial of the motion for separate trials.

In n.2 of its motion at p.4, Andrews suggests that the liability and damages phases should be tried to different juries. The caselaw it cites in support of this proposition is inapposite, however. In *Simon v. Philip Morris Inc.*, 200 F.R.D. 21 (E.D.N.Y. 2001), a class action case against cigarette manufacturers which involved not only general liability claims for compensation, but individual compensatory claims and punitive damages, the Court addressed the issue of whether separate trials were permissible under the Seventh Amendment. Likewise, in *EEOC v. Nebco Evans Distribution, Inc.*, 1997 WL 416423 (D.Neb. 1997), a case involving unlawful discrimination against job applicants, the plaintiff sought to bifurcate both discovery and trial on the grounds that up to two hundred potential applicants would be involved and that the plaintiff's initial burden in such a case is far narrower than it would be at a later stage of the case, where it would have to establish the claims of the individual applicants.

In the instant case, the jury would consider claims by only two parties, and no claim for punitive damages has been asserted. In addition, the trial of this matter is straightforward and involves none of the burden-shifting that applies to discrimination cases. Therefore, the complexities of *Simon* and *Nebco Evans* are absent.

Notably, neither case supports Andrews' suggestion that separate juries are preferable in a claim such as the one at bar. To the contrary, if there were to be different juries, significant time and resources would be consumed by conducting two separate voir dire proceedings and by educating the second jury with the information provided to the first so that the second jury could

4

make a reasonable and informed decision about the damages claimed.  Where, as here, the underlying issues are inextricably intertwined, "it is particularly undesirable to have some of the relevant considerations tried by one factfinder and some by another." *Beacon Theatres, Inc. v. Westover,* 359 U.S. 500, 508 n.10, 79 S.Ct. 948, 955, 3 L.Ed.2d 988 (1959), [internal citation omitted].

Moreover, PDI would be seriously prejudiced if the second jury were to be presented with simply a thumbnail sketch of the evidence introduced at the first trial.  In addition to the fact that PDI has the right to try its case as it sees fit, and not as Andrews might prefer, even Andrews has noted in its motion that the issues presented in this matter are technically complex.  Therefore, the jury would clearly benefit by having matters explained by live witnesses, rather than simply hearing a stipulation read to them.

Andrews also cites *Vichare, supra*, for the proposition that bifurcation may be appropriate where the evidence offered on two different issues is wholly distinct or where litigation of one issue may obviate the need to try another.  Motion at ¶ 14, p.3.  Like *Nebco Evans*, *Vichare* is a discrimination case.  The plaintiff, a discharged employee, sought to bifurcate his Title VII claim from the defendant's counterclaim of breach of fiduciary duty in order to have after-acquired evidence of the plaintiff's alleged misconduct admitted only in the counterclaim phase of the trial.  In such a case, it might fairly have been said that the issue of the defendant's state of mind in discharging the plaintiff was a separate issue from the plaintiff's breach of his fiduciary duty where the defendant had no information with respect to the alleged breach until the discovery phase of the plaintiff's lawsuit.  *Vichare*, 106 F.3d at 460.  Even so, the Second Circuit affirmed the trial court's denial of this motion.  *Id.* at 467.

In ¶ 20 of its motion, at p.4, Andrews has stated that separate trials are warranted

5

because they will expedite the trial on the issue of liability and possibly avoid several days of trial. The same can be said of virtually every civil lawsuit on this Court's docket: if the defendant prevails, the evidence of damages was not necessary. What Andrews fails to note is that, in this Circuit, bifurcation remains the exception rather than the rule.[1] In addition, as the Court in *Svege* noted when those defendants presented a similar argument:

> Defendants also argue that bifurcation will promote economy because a damages phase will likely be unnecessary. The Court certainly appreciates Defendants' confidence on the eve of trial. However, without expressing any view on the ultimate outcome of this trial, it suffices to say that Defendants "projected savings are by no means guaranteed." *See Aldous*, 1996 WL 312189, at *2.[2] And if there is a verdict against Defendants of liability, bifurcating liability and damages will likely end up being more inefficient than presenting all issues and all evidence to the jury at one time.

*Svege*, 329 F.Supp.2d at 285.

To secure separate trials, Andrews must make a strong showing that substantial benefits can be expected as a result of bifurcation. Andrews has failed to make such a showing. To the contrary, separate trials would result in increased litigation costs, waste of judicial resources, inconvenience to non-party witnesses, and significant duplication of efforts. Therefore, the motion for separate trials should be denied.

C.     <u>Andrews would not be prejudiced by a single trial</u>.

Andrews suggests in its motion that the trial should be bifurcated because it has not retained an expert to rebut Renner's testimony and would prefer not to incur such expense. The

---

[1] In *Kushner v. Hendon Construction, Inc.*, 81 F.R.D. 93, 98 (M.D.Pa. 1979), the Court predicted that "I would expect that in 15 years or less the law on this point will be changed. Bifurcation will become the rule and failure to bifurcate the exception." This prediction has not proven true in courts within the Second Circuit. *See, e.g., Svege*, 329 F.Supp.2d at 284; *U.S. v. 43.47 Acres of Land*, 45 F.Supp.2d at 190-91; *Monaghan v. SZS 33 Assoc.*, 827 F.Supp. 233, 245 (S.D.N.Y.1993); *ABB Industrial Systems*, 32 F.Supp.2d at 43; *Morse/Diesel*, 763 F.Supp. at 35.
[2] *Aldous v. Honda Motor Co. Ltd.*, 1996 WL 312189 (N.D.N.Y. 1996).

short answer to this concern is that Andrews is free to make its own decisions about trial strategy, but it has presented no basis for a finding that an accounting expert would be such an outrageous expense that the trial should be bifurcated to avoid this cost. Andrews has known for years that PDI is asserting a multi-million dollar claim. It has known for nearly two years that Theresa Renner would testify on this issue. It received her report of May 29, 2003. It freely chose not to disclose an expert in response to the disclosure and report. *See* Motion at n.1, p.2. In making such a choice, Andrews had to have known that the Court might disagree with its assessment of Renner's report and might deny its motion to exclude her testimony. The fact that Andrews may now question the wisdom of its decision or wish to pursue a new strategy is not a basis for bifurcation.

Moreover, Renner's revisions of October 14, 2004, do not present new and startling issues that could somehow warrant bifurcation. As set forth in the amended joint trial memorandum, filed June 7, 2004, Andrews agreed that (a) "the actual number of red and blue inserts which have been ordered by the U.S. Mint are the best evidence, and, as such, will substitute exhibits which contain quantities that are current through the date of trial"; (b) the Mint witnesses would "introduce the most current figures through that point in time" in their trial testimony; and (c) PDI would "reserve[ ] the right to provide up to date exhibits reflecting figures in the testimony of Theresa Renner. . . ." In open court on September 1, 2004, PDI's counsel advised Andrews and the Court that Renner would be revising her May 29, 2003 report to comport with certain additional facts which would impact the amount of the lost profits that could properly be claimed. On October 14, 2004, Renner published her revised report to PDI's counsel, who promptly disclosed it to Andrews. Such revised report was accompanied by a cover letter which identified specifically the revisions to the schedules and the reasons therefor and the fact that the

7

total claimed losses are now nearly $2.5 million *less* than previously believed.  PDI respectfully submits that the assertion about delays arising from a "new round of depositions" is unconvincing.

Under all the circumstances, Andrews cannot, therefore, claim to be prejudiced, or even surprised, by Renner's revised report.  Even if such a claim could be made, however, it would not be grounds for bifurcation.  The exceptional procedural device of bifurcation ought not be utilized simply because a litigant has rethought its trial strategy.  No one prevented Andrews from retaining an expert to rebut Renner, either in 2003 or five months ago, when she issued her revised report.  Andrews has presented no basis for a finding that conducting the trial of this matter in one proceeding would cause it to experience some extreme and untoward prejudice for which it bears no responsibility.  Therefore, Andrews cannot sustain a claim for bifurcation on the basis of Renner's revised report.

**D.    The jury would not be unduly confused by considering liability and damages in the same trial.**

Andrews argues that the jurors would be confused if they had to decide liability and damages because printing and coating are "highly technical fields".  PDI respectfully submits that Andrews underestimates juries.  It is a commonplace occurrence for juries to hear and decide cases which are far more technically intricate or otherwise complex than the case at bar.

On the issue of jury confusion, which was the one area as to which the *Svege* court noted that the "[d]efendants may have a point", the Court nonetheless rejected the claim that bifurcation of liability and damages was necessary:

> The liability and damages issues are for the most part separate, and the liability issues are reasonably technical.  However, this case is not so complicated and the liability issues are not so numerous or complex that the jury is likely to be distracted from their task on liability by the presence of testimony and exhibits

8

> relating to damages. After all, this case involves a motor vehicle accident, not brain surgery. Good lawyering and careful instructions should keep the jury focused and on task even if liability and damages are tried together.
>
> On balance, therefore, the Court is not convinced that Defendants have satisfied their burden of establishing that bifurcation would produce substantial benefits justifying departure from the ordinary practice of presenting the entire case, and all issues, to the jury. Accordingly, the Motion for Bifurcation [doc. # 144] is DENIED.

*Svege*, 329 F.Supp.2d at 285.

Likewise, good lawyering and careful instructions should keep the jury focused and on task in the instant case. In *Svege*, the defendants were concerned about the possibility that the jury would be distracted by the evidence involved in the liability phase, including "evidence regarding the injuries and orphaning of the two minor children of the decedent" who died in the accident, and "[g]raphic photos of the Sveges' destroyed vehicle, which are needed to illustrate testimony regarding liability, [and which] will make it abundantly clear to the jury that the accident was catastrophic and that any injuries sustained would have been substantial." *Svege*, 329 F.Supp.2d at 284-85. If bifurcation was held to be unnecessary where the liability evidence was so dramatic, it is certainly unnecessary in the instant case.

E.

In its Motion, at ¶21, Andrews requested, as an alternative, leave to re-depose Renner and produce a rebuttal expert. PDI has consistently advised Andrews that it has no objection to the re-convening of Ms. Renner's deposition for the limited purpose of the revisions in her report and her reasons for those revisions. PDI objects, however, to Andrews producing a rebuttal expert at this stage of the proceedings.

**F.**     **Conclusion.**

For the reasons set forth above, the defendant/counterclaim plaintiff, Plastic Development, Inc., respectfully asks that this Court deny Andrews' motion to bifurcate the liability and damages phase of the trial of this case.

DEFENDANT/COUNTERCLAIM PLAINTIFF ,
PLASTIC DEVELOPMENT, INC.

 /s/ Neil F. Murphy, Jr.
Neil F. Murphy, Jr., ct08381
Murphy, Laudati & Kiel, P.C.
270 Farmington Avenue, Ste. 360
Farmington, CT 06032
Telephone:  (860) 674-8296
Facsimile:   (860) 674-0850

## CERTIFICATION

      I hereby certify that a copy of the foregoing was faxed and mailed via first class mail, postage prepaid, on March 3, 2005, to all counsel of record, as set forth below:

William S. Fish, Jr., Esq.
Attorney Elizabeth K. Andrews
Matthew A. Sokol, Esq.
Tyler, Cooper & Alcorn, L.L.P.
P.O. Box 1936
205 Church Street
New Haven, CT  06509

James R. Byrne, Esq.
Tyler Cooper & Alcorn, LLP
185 Asylum Street
CityPlace – 35th Floor
Hartford, CT 06103-3488

Jeffrey L. Widman, Esq.
Shaw Gussis Fishman Glantz Wolfson & Towbin, L.L.C.
321 N. Clark Street, Ste. 800
Chicago, IL 60610

                                                                               /s/  Neil F. Murphy, Jr.
                                                          Neil F. Murphy, Jr., Esq.
                                                          ct08381