1

1

```
 1   UNITED STATES DISTRICT COURT

 2   DISTRICT OF CONNECTICUT

 3

 4   W.E. ANDREWS CO., INC.,
     a Georgia Corporation,
 5                        Plaintiff.          NO: 3:02CV599(CFD)

 6   vs.                                      September 1, 2004

 7   PLASTIC DEVELOPMENT, INC.,
     a Rhode Island Corporation,
 8                        Defendant.

 9   _____

10                             HEARING
                           450 Main Street
11                        Hartford, Connecticut

12
     B E F O R E:
13         THE HONORABLE CHRISTOPHER F. DRONEY, U.S.D.J.

14   A P P E A R A N C E S:
     For the Plaintiff:       JEFFERY D. WIDMAN, ESQ.
15                            Shaw, Gussis, Fishman, Glantz,
                              Wolfson & Towbin LLC
16                            321 N. Clark St., Suite 800
                              Chicago, IL 60610
17

18   For the Defendants:      NEIL F. MURPHY, JR., ESQ.
                              MARGARET RATTIGAN, ESQ.
19                            Murphy, Laudati & Kiel,P.C.
                              270 Farmington Ave., Suite 360
20                            Farmington, CT 06032

21

22
     Reported by       :      Martha Marshall, RMR, CRR
23

24

25   Proceedings recorded by mechanical stenography, transcript
     produced by computer.
```

113

```
 1
 2
 3
 4              C E R T I F I C A T E
 5
 6         I, Martha C. Marshall, RMR, CRR, hereby certify
 7    that the foregoing pages are a complete and accurate
 8    transcription of my original stenotype notes taken in the
 9    matter of W.E. ANDREWS V. PLASTICS DEVELOPMENT, et al, which
10    was held before the Honorable Christopher F. Droney,
11    U.S.D.J, at 450 Main Street, Hartford, Connecticut, on
12    September 1, 2004.
13
14
15
16
17
                    Martha C. Marshall, RMR, CRR
18                  Official Court Reporter
19
20
21
22
23
24
25
```

1    to any evidence whatsoever which --

2            THE COURT:  I'm not saying that either one of you

3    has waived your right to object to it.  I just wanted to

4    make sure I hadn't missed anything.  I'll give both sides

5    the opportunity to object to that.

6            So, Mr. Widman, should we proceed with yours then?

7    Is there any particular order that you wanted to go?

8            MR. WIDMAN:  Other than the order than I've

9    written them in in my notepad, no.

10            THE COURT:  Whatever order you want to do is fine

11    with me.

12            MR. WIDMAN:  May I approach, your Honor?

13            THE COURT:  Yes.

14            MR. WIDMAN:  I guess the first motion that we

15    would ask the Court to consider is our motion to exclude

16    lost profits beyond the October 2003 time frame.  As the

17    Court is aware, Plastic Development seeks consequential

18    damages for lost profits associated with contracts that it

19    did not enter into with the U.S. Mint as part of their

20    consequential damage claim.  And their theory is that the

21    mint, PDI and Andrews all had a, quote unquote, reasonable

22    expectation that this business relationship would continue

23    through 2008 to possibly 2009.  But what's important here is

24    that the contract upon which PDI seeks -- the future

25    contracts upon which PDI is seeking its consequential damage

 1    there's no reason this principle should not also apply

 2    between the contractor and the subcontractor when the damage

 3    claims arise and are based out of future contracts from that

 4    government contract.  And that is the basis that we seek to

 5    exclude all testimony and evidence of lost profits after the

 6    expiration of that 2000 through 2003 contract.

 7              THE COURT:  Thank you.

 8              Attorney Murphy, are you going to respond to that

 9    one?

10              MR. MURPHY:  Yes, your Honor, if I may.

11              THE COURT:  Yes, go ahead.

12              MR. MURPHY:  Thank you, your Honor.

13              May I first address because this pertains to not

14    only this motion, but essentially what we're doing with

15    regard to damages, what Attorney Widman said I would

16    acknowledge.  In fact, counsel have agreed that we will

17    provide the Court and the jury with what we believe to be

18    the most accurate and up-to-date information from the U.S.

19    Mint.  A couple of years ago we took depositions of Robert

20    Campbell who is its chief procurement officer and Sam Savage

21    who is -- Savage who is the operational engineer in

22    connection with this project.  And they agreed at that time

23    to appear in response to a subpoena and update us.  The need

24    for the update is several fold, not the least of which is to

25    determine the actual numbers, what the contract has done in

1    terms of actual orders, what the Mint has done in terms of

2    actual orders from the vendors.

3             Let me just say generally that it is PDI's

4    position, as corroborated by facts which have been adduced

5    through deposition, that they were one of two, and only two

6    vendors nationwide or internationally, for that matter, to

7    provide the U.S. Mint with inserts for its state quarter

8    program which program was mandated by statute.  And

9    Mr. Campbell will, when he testifies, explain more on

10   that.

11            THE COURT:  What about the proof sets, though?

12            MR. MURPHY:  The proof sets through the Mint, they

13   construed them as being a minimum of two million and they

14   were going to order up to ten million.

15            THE COURT:  But were there other vendors, more

16   than two?

17            MR. MURPHY:  No, your Honor, just two.  And while

18   we were on board there was only two and they didn't seek a

19   third.  We have submitted with our objection what we

20   consider to be on point testimony of Mr. Savage wherein he

21   said that while we were the second vendor they never sought

22   a third.  Once the contract was terminated by the Mint, they

23   sought a third.  Once that third was in place, Pacific

24   Operation, they limited themselves to the two at that point.

25            THE COURT:  What's the point of that then?  Since

2

***ATTACHMENT A - OPINIONS***

## SUMMARY

The objective of this engagement was to overview the lost profits calculations prepared by Plastic Development, Inc. (referred to as PDI) and recommend appropriate adjustments in order to prepare an analysis of the lost profits (see Schedules I, II, and III for details).

My approach in reviewing the lost profits calculations prepared by PDI consisted of several components. For example, in order have a "visual" of the Company and to gain an understanding of PDI, its warehouse, products and specifically the process involved in the production of the inserts, I toured their facilities. Some of the procedures used to overview the costing approach for reasonableness and completeness, consisted of: interviewing/questioning Normand Thibaudeau and PDI's accountant numerous times in order to comprehend the who, what, when, where and whys of the components of the costing model; comparing a sample of invoices to costing work papers; making recommended adjustments where necessary, etc. I also read the contracts between the U. S. Mint and PDI, orders from the U.S. Mint, depositions, all of which provided insight to the engagement, among other things.

Normand Thibaudeau provided the assumption for the number of inserts sold to the U.S. Mint, which represents the minimum amount. The minimum amounts are based on PDI's historical experience and information provided by the U.S. Mint. Bottom line damages may increase if the amount of inserts to be sold is determined to be higher.

Based on such analysis, various communications with Normand Thibaudeau and my professional knowledge, as of the date of this report the total lost profit has been calculated to be $ 9,730,000, exclusive of interest and discount rate factors (see next paragraph).

Derek Johnson, an economist, has developed interest and discount rates to be applied to the lost profits. I have participated and concur in the development of the interest and discount rates. Using a discount rate (based on current blended T-bill rates and historical blended alternative investment rates) of 7.55% and applying it to the lost profits from 2004 through 2009, results in the present value of such lost profits to be $5,066,000. The U.S. T-bill interest rates from 2001 through 2003 have been used to calculate interest on pre-trial lost profits. The total of lost profits and interest from 2000 through 2003 is $3,296,000. Total calculated lost profits inclusive of interest and discount rates are $8,362,000.

3

*Attachment A – Opinions*

## NOTES

1. Interest on pretrial damages has not been calculated on Schedules I, II and III.

2. Discount rate has not been applied to post-trial damages on Schedules I, II and III.

3. Schedules are subject to change as updated and more detailed data from the U.S. Mint becomes available.

4. To my knowledge, Plastic Development, Inc. has not completed 2002 financial information prior to the issuance of this report, which may have impacted the analysis.

5. At the date of this report, trial date was unknown. For reporting purposes, December 31, 2003 has been used as the pre-trial cut-off date and post trial is assumed to be January 1, 2004 thru December 31, 2009. It may be necessary to adjust the analysis once trial date is known.

6. Totals on Schedules are subject to immaterial rounding differences

4

4

```
 1        A    I didn't -- I wasn't thinking along those
 2   terms.
 3        Q    Why not?
 4        A    I was thinking that they've produced in
 5   '99 and 2000, roughly a little under 2 million.  And
 6   based on assumptions from Normand and reading the
 7   depositions that that was going to stay consistent
 8   and that was an assumption that was made.  It's kind
 9   of as simple as that.
10        Q    And as applied to the 2001, that number
11   makes no sense because it's greater than the actual
12   number that was even produced.
13             Right?
14        A    I'll go back to when you look at
15   2001, it looks a little skewed in the reds and the
16   blues.  So I'm not a hundred percent sold that that
17   red number might not be wrong.  I don't know.
18        Q    You don't know if these numbers are
19   accurate?
20        A    I didn't audit them or verify them
21   or, you know.  I used them as a guideline.  My
22   report makes reference to that these numbers -- my
23   report may change based on actual numbers that
24   are -- that may be received from the Mint.
25             So at some point I have to use a judgment
```

5

# MR &C MAGDEFRAU, RENNER & CIAFFAGLIONE LLC
### Certified Public Accountants

STUART E. MAGDEFRAU, CPA, PFS
THERESA L. RENNER, CPA, CVA
MARK S. CIAFFAGLIONE, CPA

BETH I. GARDNER, CPA
KENT D. ZAHNER, CPA

7 KEYNOTE DRIVE
VERNON, CONNECTICUT 06066
TELEPHONE (860) 875-8539
TOLL FREE (866) 354-6103
FAX (860) 870-8301
www.keynotecpas.com

October 14, 2004

Attorney Neil F. Murphy, Jr.
Murphy, Laudati & Kiel, P.C.
270 Farmington Avenue
Suite 360
Farmington, Connecticut 06032

Re:     W.E. Andrews Co, Inc. V. Plastic Development, Inc.
            **Revised Report – October 14, 2004**

Dear Attorney Murphy:

### *Schedules I and II - Revised*
Schedules I and II as originally included in my report dated May 29, 2003 have been revised.

### Sales

On the summary of the original report dated May 29, 2003, it was indicated adjustments were anticipated with regards to the number of inserts sold to the U.S. Mint. Normand Thibaudeau compiled data recently received from the U.S. Mint with regards to actual quantities of red inserts that were delivered from 2001 to the current. This compilation was then used to update the sales portion of Schedule II – Lost Profit Analysis: Red Inserts.

The sales price per insert portion of Schedule II –Lost Profit Analysis: Red Inserts was also changed from $.44 to $.46 per insert.

### 2009

The U.S. Mint has advised that they cannot guarantee orders for 2009; in consideration, 2009 lost profits have been eliminated from the schedules.

### Blue Inserts

In addition, we have become aware of a policy change in which the U.S. Mint will not be contracting with the same vendor to provide both red and blue inserts; therefore, lost profits for blue inserts have been removed.

## Expenses

Also, as a result of the removal of blue inserts, the cost per insert of red inserts has increased due to expenses which were previously allocated to blue and red inserts (are now allocated only to red inserts). The shrinkage factor on the cost per insert has also been adjusted due to the knowledge of actual quantities of inserts ordered.

### *Summary-Revised*
Please see attached revised "total lost profits" portion of summary.

### *Work papers- Revised*
While preparing the revised Schedules I and II, certain work papers (previously part of Plaintiff's Exhibit 3) were changed, copies are attached.


Please call with any questions.

Very truly yours,

*Theresa L. Renner*

Theresa L. Renner, CPA

Attachments

**Plastic Development, Inc.**
**SCHEDULE J - Lost Profit Analysis: Summary of Red Inserts**
**Years Ending December 31, 2000 thru 2008**

| | 2000 | 2001 | 2002 | 2003 | 2004 | Subtotal Pre-trial | 2005 | 2006 | 2007 | 2008 | Subtotal Post-trial | Grand Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Lost Profits - Red Inserts | $146,771 | $436,827 | $649,852 | $965,116 | $934,488 | $3,133,094 | $720,344 | $697,144 | $697,144 | $697,144 | $2,811,776 | $5,944,871 |

REVISED 10/13/04

## Plastic Development, Inc.
### SCHEDULE II - Lost Profit Analysis:  Red Inserts
### Years Ending December 31, 2000 thru 2008

| | 2000 | 2001 | 2002 | 2003 | 2004 | Subtotal Pre-trial | 2005 | 2006 | 2007 | 2008 | Subtotal Post-trial | Grand Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Sales** | | | | | | | | | | | | |
| Insert/units | 231,270 | 1,714,000 | 2,081,300 | 2,995,200 | 2,906,100 | 9,929,870 | 2,265,783 | 2,265,783 | 2,265,783 | 2,265,783 | 9,063,133 | 18,993,003 |
| Sales price | 0.46 | 0.46 | 0.46 | 0.46 | 0.46 | | 0.46 | 0.46 | 0.46 | 0.46 | 0.46 | 0.46 |
| Sales dollars | $ 106,384 | $ 788,440 | $ 957,398 | $ 1,377,792 | $ 1,337,726 | $ 4,567,740 | $ 1,042,260 | $ 1,042,260 | $ 1,042,260 | $ 1,042,260 | $ 4,169,041 | $ 8,736,782 |
| | | | | | | | | | | | | |
| Insert/units | | | | | | | | | | | | |
| Sales price | | 0.44 | | | | | | | | | | 0.44 |
| Sales dollars | | - | 0 | $ | $ | | | | | | $ | - |
| | | | | | | | | | | | | |
| **Total Sales** | 106,384 | 788,440 | 957,398 | 1,377,792 | 1,337,726 | 4,567,740 | 1,042,260 | 1,042,260 | 1,042,260 | 1,042,260 | 4,169,041 | 8,736,782 |
| | | | | | | | | | | | | |
| **Costs** | | | | | | | | | | | | |
| Raw Materials | | 173,464 | 210,637 | 303,127 | 294,312 | 981,540 | 229,307 | 229,307 | 229,307 | 229,307 | 917,228 | 1,898,768 |
| Direct Labor | | 60,768 | 28,538 | 24,557 | 23,969 | 137,862 | 19,886 | 19,886 | 19,886 | 19,886 | 79,544 | 217,405 |
| Overhead | | 80,565 | 44,119 | 63,492 | 61,645 | 249,822 | 48,030 | 48,030 | 48,030 | 48,030 | 192,119 | 441,941 |
| Packaging | | 4,444 | 5,397 | 7,767 | 7,541 | 25,148 | 5,875 | 5,875 | 5,875 | 5,875 | 23,501 | 48,649 |
| Shipping | | 19,540 | 23,727 | 34,145 | 33,152 | 110,564 | 25,830 | 25,830 | 25,830 | 25,830 | 103,320 | 213,884 |
| Other | | 12,631 | 16,189 | 16,189 | 16,189 | 61,397 | 16,189 | 16,189 | 16,189 | 16,189 | 64,754 | 126,151 |
| | | | | | | | | | | | | |
| Total costs | | 351,613 | 328,606 | 449,276 | 436,838 | 1,565,333 | 345,116 | 345,116 | 345,116 | 345,116 | 1,380,465 | 2,946,798 |
| | | | | | | | | | | | | |
| Other adjustment Salvage costs | 40,387 | | | | | 40,387 | | | | | | 40,387 |
| Reduction of debt-interest | | | 21,100 | 36,600 | 33,600 | 91,300 | 23,200 | | | | 23,200 | 114,500 |
| | | | | | | | | | | | | |
| **LOST PROFIT** | $ 146,771 | $ 436,827 | $ 649,892 | $ 965,116 | $ 934,488 | $ 3,133,094 | $ 720,344 | $ 697,144 | $ 697,144 | $ 697,144 | $ 2,811,776 | $ 5,944,871 |

REVISED 10/13/04

W.E. Andrews Co, Inc. v. Plastic Development, Inc

## Summary-Revised
### "total lost profits" portion of summary

The changes described in revised report letter dated October 14, 2004 have resulted in a revised total lost profit of $5,945,000 exclusive of interest and discount rates.

With a discount rate of 7.55% (see Report dated May 29, 2003) applied to the lost profits from 2005 through 2008 the present value of such lost profits is $ 2,354,000. The U.S. T-bill interest rates from 2001 through current were used to calculate interest on pre-trial lost profits. The total of lost profits and interest from 2000 though current is $ 3,205,000. Total calculated lost profit inclusive of interest and discount rates are $5,559,000.